**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Pablo CARREON, Defendant-Appellant.**

**No. 79–2130.**

United States Court of Appeals,
Seventh Circuit.

Argued April 30, 1980.

Decided July 9, 1980.

Adam Bourgeois, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U.S. Atty., Douglas Miller, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and BAUER, Circuit Judges, and EAST, Senior District Judge.*

BAUER, Circuit Judge.

Defendant Pablo Carreon appeals from his conviction on one count of conspiracy to distribute heroin in violation of 21 U.S.C. § 846 and on seven counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1). Carreon contends that his statutory and constitutional speedy trial rights were violated, that he was entrapped, and that his rights under the double jeopardy clause of the Fifth Amendment were violated. We affirm the judgment of conviction on all counts.

### I. Speedy Trial Rights

#### A. Procedural History

The original indictment against Carreon was filed on April 10, 1975. Shortly thereafter, he failed to appear at a scheduled plea hearing, and his case was placed on the district court's fugitive calendar, where it remained for over a year. Ultimately, Carreon reappeared, and his case was assigned to Judge Alfred Y. Kirkland. A hearing was set for September 2, 1976, at which time it was contemplated that Carreon would plead guilty to two counts of the indictment and that the government would seek dismissal of the remaining counts.

Because Judge Kirkland was unavailable on September 2, the hearing on Carreon's guilty plea was held before Judge John F. Grady. After eliciting Carreon's version of the facts, Judge Grady refused to accept the plea, ruling that an entrapment defense would be available if the facts were as Carreon had stated. On the following day, however, Carreon retendered his guilty plea to Judge Kirkland, who accepted it without detailed questioning. Carreon was sentenced to two concurrent terms of four years of imprisonment to be followed by three years of parole and was duly imprisoned.

On March 10, 1977, Carreon filed a petition under 28 U.S.C. § 2255 seeking to set aside his conviction on the ground that his guilty plea had been involuntarily given. The district court granted summary judgment for the government on the petition, and Carreon appealed to this Court. On May 3, 1978, while that appeal was pending, Carreon was released on parole; he had served twenty-six months in prison, including credit for time served prior to his conviction. On June 14, 1978, this Court reversed the district court's grant of summary judgment on the § 2255 petition, ruling that Carreon's guilty plea had not been taking in conformity with Fed.R.Crim.P. 11 and had not been made voluntarily. *Carreon v. United States*, 578 F.2d 176 (7th Cir. 1978) (*Carreon I*).

Prior to June 28, 1978, when this Court's mandate in *Carreon I* would have issued, the government moved for an extension of time in which to petition for rehearing. That motion was granted, and the mandate of this Court was stayed until July 28, 1978. The government ultimately determined not to petition for rehearing, but, apparently because of a clerical oversight, the mandate did not issue on July 28. Meanwhile, Judge Kirkland conducted status calls in the case on June 22, August 8, and September 20, 1978; at the third status call, Judge Kirkland ordered that the case be removed from his calendar pending disposition by this Court. This Court's mandate in *Carreon I* finally reached the district court on December 5, 1978, but no further action was taken in the district court until May 1, 1979, when

* The Honorable William G. East, Senior District Judge of the United States District Court for the District of Oregon, is sitting by designation.

Judge Kirkland's illness caused the case to be reassigned to Judge Nicholas J. Bua.

Judge Bua held a status hearing on May 30, 1979; at that hearing Judge Bua vacated Carreon's conviction and sentence and ordered that he be permitted to withdraw his plea. The § 2255 action was then dismissed.

On June 15, 1979, the government moved to reopen the criminal case. Chief Judge James B. Parsons granted the motion and assigned the case to Judge Joel M. Flaum for arraignment. The arraignment was first set for June 26, but was continued to July 9, 1979, because Carreon was unavailable on the earlier date. On July 9, Carreon pleaded not guilty to all counts of the indictment, and trial was set for August 27, 1979.

On July 23, 1979, Carreon moved to dismiss the indictment with prejudice on speedy trial grounds. While this motion was pending, a superseding indictment was returned on August 21, 1979. On August 27, Judge Flaum denied Carreon's motion to dismiss the prior indictment with prejudice, ruling that it should be dismissed without prejudice. Carreon then pleaded not guilty to all counts of the superseding indictment. A bench trial was had, after which Judge Flaum found Carreon guilty on all counts and sentenced him to two years of probation on each count, the sentences to run concurrently. This appeal followed.

## B. *Speedy Trial Act Rights*

Carreon first contends that the trial court erred in applying the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.* (1976).[1] Specifically, Carreon maintains that § 3161(e)[2] applies to this case, that its provision requiring retrial within sixty days of the final action occasioning retrial was violated, and that the trial court should have remedied the violation by dismissal of the original indictment with prejudice under the sanctions provisions in § 3162.[3] The government responds that § 3161(i) is the applicable subsection,[4] that even if § 3161(e) were

---

1. We note that the trial court applied the Act as it stood prior to The Speedy Trial Act Amendments Act of 1979, Pub.L.No. 96–43, 93 Stat. 327 (the post-amendment text of the Act appears at 18 U.S.C.A. § 3161 *et seq.* (Supp. 1980)), which became effective on August 2, 1979. The parties have not challenged the correctness of that action, and no issue has been raised on appeal concerning the applicability of the 1979 amendments to this case. Nevertheless, the parties have referred in their briefs to several of the changes made by the 1979 amendments, and we have therefore examined the amendments and determined that application of them to this case would not alter our result. Because the parties appear to agree that the pre-amendment text of the Act applies, we will confine our analysis to that text.

2. Prior to the August 2, 1979 amendments to the Act, 18 U.S.C. § 316(e) provided, in pertinent part,

 If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within sixty days from the date the action occasioning the retrial becomes final. . . .

 The 1979 amendments extended this time period from sixty to seventy days. *See* 18 U.S.C.A. § 3161(e) (Supp.1980).

3. The relevant portion of 18 U.S.C. § 3162, § 3162(a)(2), was unchanged by the 1979 amendments to the Act, and provides, in pertinent part,

 If a defendant is not brought to trial within the time limit required by section 3161(c) extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion . . . . In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

 Section 3161(c) is set out in note 4 *infra*.

4. 18 U.S.C. § 3161(i), which was not changed by the 1979 amendments provides,

 If trial did not commence within the time limitation specified in section 3161 because the defendant had entered a plea of guilty or nolo contendere subsequently withdrawn to any or all charges in an indictment or information, the defendant shall be deemed indicted with respect to all charges therein contained within the meaning of section 3161, on the day the order permitting withdrawal of the plea becomes final.

 The relevant portion of § 3161, 18 U.S.C. § 3161(c), provided, prior to the 1979 amendments, as follows:

applicable it was not violated, that no sanctions are available under the Act for a violation of either subsection, and that, in any event, the trial court correctly applied § 3162 in ruling that dismissal of the prior indictment should be without prejudice.

■ Our analysis of the Speedy Trial Act issue does not differ materially from that of the district court. The district court apparently assumed that the sanctions of § 3162 were applicable in this case to a violation of either § 3161(e) or § 3161(i). For purposes of our decision, we will also assume their applicability.[5] The district court next reasoned that it need not determine whether § 3161(e) was applicable, as Carreon contends, or whether § 3161(i) applied, as the government urges,[6] because § 3161(e) had not been violated,[7] and because, although

> The arraignment of a defendant charged in an information or indictment with the commission of an offense shall be held within ten days from the filing date (and making public) of the information or indictment, or from the date a defendant has been ordered held to answer and has appeared before a judicial officer of the court in which such charge is pending whichever date last occurs. Thereafter, where a plea of not guilty is entered, the trial of the defendant shall commence within sixty days from arraignment on the information or indictment at such place, within the district, as fixed by the appropriate judicial officer.

The 1979 amendments eliminated the bifurcated time limit of ten and sixty days, imposing instead a single, seventy-day requirement that runs from the later of the filing or appearance date to the trial date. *See* 18 U.S.C.A. § 3161(c)(1) (Supp.1980).

5. Under the pre-amendment version of the Act, the sanctions provisions of § 3162 were to become effective and apply to cases instituted on or after July 1, 1979. 18 U.S.C. § 3163(c) (1976). The August 2, 1979 amendments moved the effective date of the sanctions back to July 1, 1980. *See* 18 U.S.C.A. § 3163(c) (Supp.1980). This left a month between July 1 and August 2, 1979 when the sanctions may have been in force. Assuming they were in force, it is doubtful that they apply to Carreon's case because it does not appear that the case was commenced within the critical month. *See id.; see also* 18 U.S.C. § 3163(c) (1976).

Carreon has not argued that, assuming the inapplicability of § 3162, the United States District Court for the Northern District of Illinois' Plan for the Prompt Disposition of Criminal Cases that was in effect prior to July 1, 1979 would require dismissal here; indeed, neither of the parties have dealt at all with the district court's interim plan. It would appear, however, that that document would control this case insofar as sanctions are involved. *See e.g., United States v. Walters,* 591 F.2d 1195, 1201 (5th Cir. 1979). Under the Northern District's current plan, which became effective on July 1, 1979, there is no requirement that a case be dismissed in circumstances that would not require dismissal under 18 U.S.C. § 3162. United States District Court for the Northern

District of Illinois, Plan for the Prompt Disposition of Criminal Cases § 9(c). In light of this, and of the failure of the parties to brief the issue, we see no need to conduct an independent inquiry into whether sanctions provided by the formerly applicable Northern District Plan might affect the result we reach in the case at bar.

We note also that the pre-amendment versions of § 3161(e) and § 3162(a) do not indicate that § 3162 sanctions were available for violations of § 3161(e). The amendments to § 3161(e) state that § 3162 sanctions do apply to that section, *see* 18 U.S.C.A. § 3161(e) (Supp.1980), although no corresponding amendment to § 3162(a)(2) was made. Given all this, it is doubtful that the Act provides any sanctions that are applicable to this case. We will nevertheless assume the applicability of § 3162 for purposes of our decision.

6. As the government points out, the difficulty with applying § 3161(e) to the case at bar is that that subsection deals with defendants who are "tried again," *see* note 2 *supra,* whereas Carreon was first convicted on his guilty plea, and was therefore never "tried" a first time. Applying § 3161(i) & (c) to the facts at bar is equally difficult, however; as the trial court noted, it is unclear what date should be considered the "filing date" that triggers the running of the ten-day period under § 3161(c), *see* note 4 *supra.* The filing date could be argued to be June 15, 1979, when Chief Judge Parsons ordered that the government be permitted to reopen the criminal case; May 30, 1979, when Judge Bua vacated Carreon's prior conviction; December 5, 1978, when our mandate reached the district court; or even July 28, 1978, when the mandate in *Carreon I* should have issued. Any of the critical dates prior to and including May 30, 1979 might be thought, under § 3161(i), *see* note 4 *supra,* "the day the order permitting withdrawal of the plea [became] final."

7. The district court found that "the date the action occasioning the retrial [became] final" under § 3161(e) was May 30, 1979, when Judge Bua enforced this Court's mandate and vacated the prior conviction and sentence. The court further found that Carreon's motion to dismiss

§ 3161(i) may have been violated,[8] that violation would not justify dismissal of the original indictment with prejudice under the provisions of § 3162(a)(2). We agree that we need not decide which subsection of § 3161 applies to the facts at bar, but we prefer to base our ruling on the broader ground that, even assuming a violation of the time limits of either subsection, dismissal of the original indictment with prejudice was not mandated by the provisions of § 3162(a)(2). The district court therefore acted within its discretion in dismissing the first indictment without prejudice.

■ In determining whether dismissal under § 3162(a)(2) should be with or without prejudice, the court must consider "among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). As the district court noted, two of these factors favor dismissal without prejudice in this case. First, Carreon's crimes were serious, and the sanction of dismissal with prejudice should therefore be imposed only for a correspondingly serious delay. Second, the adverse impact of reprosecution on the administration of justice and the Speedy Trial Act would be slight. The defendant claimed no prejudice due to the delay, the government did not intentionally seek delay,[9] and the unusual circumstances of the case would be unlikely to recur, thus causing the sanctioning of similar delays in the future.

■ Consideration of the third factor, the facts and circumstances that led to the delay, also indicates that dismissal without prejudice was proper. The total delay of which Carreon appears to complain amounted to just over a year, or from June 14, 1978, when *Carreon I* was issued, to July 23, 1979, when Carreon moved for dismissal. Carreon has no cause to complain of the delay resulting from the stay of this Court's mandate until July 28, 1978. The delay in

the indictment on July 23, 1979 tolled the running of § 3161(e)'s sixty-day time limit. *Cf.* 18 U.S.C. § 3161(h)(1)(E) & (G) (1976) (delay due to hearings on pretrial motions and proceedings concerning defendant taken under advisement are excludable time). Accordingly, the court found that the sixty-day limit was not transgressed.

Carreon challenges this reasoning, contending that May 30, 1979 was not the date the action occasioning retrial became final; Carreon does not indicate, however, what earlier date he thinks should have been chosen as the applicable date. As we state in text, *infra*, we do not reach the issue of whether § 3161(e) was violated.

8. The district court noted that § 3161(i) may have been violated because, whatever relevant date is considered to be the filing date for § 3161(c) purposes, Carreon was not arraigned within ten days of the filing date. Carreon was, however, scheduled for arraignment on June 26, 1979, eleven days after the case was reopened on June 15. Carreon's unavailability, which is excludable time, 18 U.S.C. § 3161(h)(3)(A) (1976), caused the arraignment to be moved back to July 9, 1979. As the trial court noted, arraignment would have been scheduled at least a day earlier had the court suspected that the § 3161(c) time limit began to run on June 15.

9. Carreon argues that the record does not disclose whether the government's failure to move to expedite the case was due to intentional procrastination or merely to negligence. The record provides no basis for a conclusion that the government may have intentionally delayed the proceedings, however, and the trial court so found, noting that, "No suggestion has been made that the Government's inaction was due to anything more than negligence." Carreon presented no witnesses at trial, and there is no indication that he could have been tactically disadvantaged in any way by the delay. The government, on the other hand, was faced with the prospect of calling witnesses to testify in 1979 concerning events that took place in 1974. It is unlikely that the government attempted to delay the trial while the prosecution witnesses' memories continued to fade. No further investigation of the case by the government was required or undertaken, and Carreon was at liberty during the entire period of delay. Moreover, the government manifested its good faith during the course of the proceedings by prompting Carreon's counsel to move for vacation of the conviction and sentence at the hearing held by Judge Bua on May 30, 1979. It is Carreon's burden to demonstrate a denial of his speedy trial rights, 18 U.S.C. § 3162(a)(2) (1976), and he has failed to present any evidence that the delay was due to anything other than clerical oversight on the part of the courts and negligence on the part of both parties.

issuance of the mandate until December 5, 1978 was due not to the government but to a court error; although the government did not move for issuance of the mandate, neither did Carreon, who was the prevailing party and who makes no contention that he was not represented by counsel during the delay. Similarly, the delay between December 5, 1978 and May 30, 1979 was apparently due to Judge Kirkland's illness and the fact that Judge Kirkland had removed the case from his calendar. Carreon took no steps in the district court to cut short this delay.[10] Finally, we note that the two-week delay between June 26 and July 9, 1979 was due to Carreon's unavailability. Because the delay was in major part due to the negligence of the parties and oversight in the courts, and because Carreon failed to assert his speedy trial rights or otherwise move to expedite the case prior to July 23, 1979, the reasons for the delay do not mandate dismissal of the prior indictment with prejudice. Accordingly, the trial court acted within its discretion in determining that to try Carreon would not violate the Speedy Trial Act.

*C. Sixth Amendment Speedy Trial Right*

 What we have already said largely disposes, we think, of Carreon's complaint that his Sixth Amendment speedy trial right was violated. Although Sixth Amendment speedy trial issues require a careful, ad hoc balancing approach, four critical factors are to be examined in every case. These are the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514,

530, 533, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). Considering these factors, we conclude that no Sixth Amendment violation occurred.

The length of delay here involved was approximately one year. Though significant, the delay was not extreme. *See United States v. Joyce*, 499 F.2d 9, 20 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974). The delay was due, in part, to the government's negligence in failing to move to expedite the case. Such negligence is to be "weighted less heavily" than intentional delay. *Barker v. Wingo*, *supra*, 407 U.S. at 531, 92 S.Ct. at 2192. The delay was also due to Carreon's negligence, however; Carreon failed to asset his right during the entire period of the delay. As the Supreme Court emphasized in *Barker*, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2193. Finally, Carreon has alleged no prejudice as a result of the delay. He was not in custody during the delay, he alleges no anxiety or concern as a result of the delay, and, most importantly, he does not allege any impairment of his ability to defend himself as a result of the delay.[11] Thus, applying the *Barker v. Wingo* balancing test, we conclude, as did the trial court, that Carreon's Sixth Amendment right to a speedy trial was not infringed.

## II. Entrapment

Carreon next contends that the trial court erred in ruling that he was not entrapped. He argues that a transcript of his testimony given at the separate trial of his

---

10. Carreon has argued that, because Judge Kirkland had removed Carreon's case from his calendar on September 20, 1978, and because the case was not, therefore, pending before any district judge when the district court received our mandate in *Carreon I*, Carreon was precluded from moving in the district court to expedite the proceedings. We doubt that this is the case; Carreon could have filed a motion either in this Court or in Judge Kirkland's court to determine the status of his case. We would view Carreon's allegation that he was precluded from expediting the case more seriously if he had tried to do so and failed.

11. Nor does the record disclose any impairment of Carreon's defense. Carreon called no witnesses at trial and apparently desired to call none. Informant Maria Hernandez, who was a key witness as to Carreon's entrapment defense, was available, but Carreon chose not to call her to testify. The government's witnesses at trial experienced only slight lapses of memory, none of which were in any was prejudicial to Carreon. We can find no evidence of prejudice on this record.

co-indictee and introduced by the government in its case-in-chief against Carreon raised the issue of entrapment, that the issue remained unrebutted by the remainder of the government's case, and that he was therefore entitled to acquittal as a matter of law.

■ In his prior testimony, Carreon stated, in substance, that he had not been involved in drug sales until his lover Maria Hernandez, who was then a government informant, induced him, by persistent requests and by use of her position of influence with him, to sell heroin. The trial court ruled that Carreon's prior testimony did not require a finding of entrapment as a matter of law, that testimony given by government agents had demonstrated Carreon's predisposition beyond a reasonable doubt and had thus rebutted any evidence of entrapment contained in Carreon's prior testimony, and that, accordingly, Carreon had not been entrapped. Having reviewed the trial transcript and the transcript of Carreon's former testimony, we find the trial court's ruling on entrapment to be supported by sufficient evidence.

■ Carreon does not contend that the use by the government of an informant who was also his lover violated the due process clause of the Fifth Amendment,[12] but rather argues only that the government failed to prove beyond a reasonable doubt his predisposition to sell heroin. Under settled standards, predisposition is adequately proved, and an entrapment defense is not, therefore, available, *see Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), if the government demonstrates that the accused exhibited "a willingness to commit the crime . . . charged as evidenced by accused's ready response to the inducement." *United States v. Viviano*, 437 F.2d 295, 299 (2d Cir.), *cert. denied*, 402 U.S. 983, 91 S.Ct. 1659, 29 L.Ed.2d 149 (1971). Under this standard, the government sustained its burden.

■ First, many portions of Carreon's prior testimony indicating reluctance on his part were contradicted by the testimony of government agents.[13] As Carreon himself did not take the stand, the trial court had no opportunity to observe his demeanor or assess his credibility; given this and Carreon's obvious interest in the case, the court may have credited the agents' testimony and discredited Carreon's former testimony. Second, the agents testified to many incidents which, if believed, were sufficient to demonstrate Carreon's predisposition.[14]

12. Although this issue was not raised, we have examined Carreon's testimony to determine if a due process issue plainly is present on the record. Were the facts as Carreon testified, a colorable claim under the due process clause might be present. *But cf. Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). Carreon's version of the events was disputed by the government on most significant points, however, and, as with the entrapment issue discussed in text, *infra*, the trial court was clearly entitled to discredit Carreon's story. Under these circumstances, even if we were to interpret Carreon's entrapment argument as presenting also a due process issue, that issue would have to be resolved in favor of the government.

13. It would serve no useful purpose to set out some or all of the numerous instances of conflict between the agents' testimony and Carreon's prior testimony. It suffices to say that Carreon testified to a series of events in which he often protested that he did not wish to go through with the sales, and that the agents testified to a series of events in which Carreon demonstrated willingness and readiness to deal in heroin.

14. Carreon has argued on appeal that predisposition must be proved by evidence of the defendant's conduct prior to commission of the crime in question; alternatively, Carreon has urged that conduct prior to the criminal act is more probative of predisposition than subsequent conduct, and that there was insufficient prior conduct evidence in this case. As to the former contention, Carreon cites no authority for such a rule, and we know of none. While it is true that predisposition turns on a defendant's mental state prior to commission of the crime, that mental state may be proved by relevant and admissible evidence concerning the defendant's actions either before or after commission of the crime. *See United States v. Townsend*, 555 F.2d 152, 157 n. 8 (7th Cir.), *cert. denied*, 434 U.S. 897 (1977).

As to Carreon's alternative contention, we do not disagree with the general proposition that conduct prior to commission of the crime may often provide stronger evidence of predisposition than conduct subsequent to the crime. We do disagree, however, with Carreon's con-

Among these were that Carreon had told agents that he desired to sell larger quantities of heroin to increase his profit, had informed agents that one sample of heroin was of poor quality, had initiated contact with the agents at least once, had endeavored to promote sales by informing the agents of the whereabouts of his source and the timeliness of his deliveries, had delivered the heroin in devious ways that tended to demonstrate his experience in drug sales, and had provided free samples to induce sales. Accordingly, we find sufficient evidence of record to support the trial judge's finding that Carreon was not entrapped.

### III. Double Jeopardy

■ Finally, Carreon contends that his rights under the double jeopardy clause of the Fifth Amendment were violated. His argument is in two parts. First, he argues that jeopardy attached when we was sworn to give testimony in the plea hearing before Judge Grady, and that he could not be later tried, therefore, upon the six counts of the indictment that were subsequently dismissed pursuant to the plea agreement that resulted in the guilty plea entered in Judge Kirkland's court. Carreon cites no authority for this novel interpretation of the concept of jeopardy,[15] and we decline the invitation to declare a rule that would undermine the entire system of plea bargaining.

Second, Carreon contends that his sentence of two years probation violates the rule of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), that "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." *Id.* at 718–19, 89 S.Ct. at 2077. It does so, Carreon says, because the twenty-six months of imprisonment plus some months of parole that Carreon actually served more than cancel out a two-year probation term, and because, therefore, the crediting of the former against the latter requires that Carreon should have no remaining sentence to serve.

■ Initially, we note that this issue was not raised in the district court by a post-sentencing motion. Accordingly, it cannot be considered on appeal unless it involves plain error or a defect affecting substantial rights. Fed.R.Crim.P. 52(b). We find no plain error, and none of Carreon's substantial rights were affected. Carreon was sentenced to two years of probation on each of the eight counts of the indictment, the sentences to run concurrently. Even if we were to find a defect under *Pearce* with respect to the sentence on the two counts of the indictment of which Carreon had previously been convict-

---

tention that the absence of evidence of predisposition in the form of evidence of Carreon's conduct prior to the first substantive offense charged renders the government's case insufficient to establish predisposition beyond a reasonable doubt. Having read Carreon's prior testimony, and having compared it to that of the agents, we believe the trial court could properly have accorded Carreon's tale of entrapment little or no weight. Given Carreon's later actions, some of which are listed in text, *infra*, the trial court could properly have found that Carreon at some point acquired the desire to sell heroin and knowledge of how to do so. It would also have been reasonable, on the record, to conclude that this desire and knowledge on Carreon's part did not come into existence during the course of the events at issue, but rather had existed from the outset of the series of transactions charged. Finally, the September 8 heroin transfer, which formed the basis for Count II, the first substantive count of the indictment, involved the transfer of a free

sample of heroin; this transfer could reasonably have been viewed by the court as an action intended by Carreon to promote future sales, and thus as indicative of Carreon's predisposition. Given all this, and given also the limited scope of review in this Court of findings of fact in the trial court, we conclude that the government's case on the entrapment issue was not legally insufficient despite the absence of predisposition evidence in the form of evidence of Carreon's conduct prior to the first substantive count charged.

15. Carreon's reliance on *United States v. Freije*, 282 F.Supp. 997, 999 n.1 (D.N.H.1968), aff'd after trial on other grounds, 408 F.2d 100 (1st Cir.), *cert. denied*, 396 U.S. 859, 90 S.Ct. 129, 24 L.Ed.2d 111 (1969), is misplaced. In that case dismissal of the counts occurred after the jury had been sworn and jeopardy had attached.

ed and on which he had previously been sentenced, the sentence of probation on the six remaining counts would still stand. Accordingly, no substantial right has been affected. *See United States v. Peters,* 617 F.2d 503, 506 (7th Cir. 1980).

Although we need not go further, we note also that the trial court plainly intended to sentence Carreon to time served, to suspend that sentence, and to impose the two years of probation in lieu of what would have been a mandatory three-year special parole term under 21 U.S.C. § 841(b)(1)(A) had the sentence to time served not been suspended. The sentencing order read: "[T]he imposition of sentence is hereby suspended and defendant is placed on probation for a period of TWO (2) YEARS." During the sentencing hearing, Judge Flaum stated:

> All right, I deem that the custody that Pablo Carreon has served in this case is sufficient, the 23 months that he has served . . .. However, I do deem it appropriate there be some probationary time for this offense, and I'm going to sentence Pablo Carreon to two years probation . . ..

The apparent reason that the suspended sentence was given was that Judge Flaum wished to avoid the mandatory parole term provisions of § 841(b)(1)(A); defense counsel was aware of this problem, and, indeed, he requested at the sentencing hearing that, for this reason, only a short term of probation be imposed. Counsel cannot argue now that the action formerly requested was in error, especially since the issue was not first raised in the district court. Moreover, we are at a loss to understand what Carreon could gain by prevailing on this issue. The proper remedy, were a *Pearce* violation to be found, would be to vacate the sentence on the two counts and remand for resentencing. Carreon's argument appears to be that the trial court's alternatives on remand would be either to increase the sentence or to set Carreon totally at liberty. The trial judge has already said that he finds a period of continued supervision necessary, and thus the likely outcome of a remand would be a sentence to time served plus the § 841(b)(1)(A) three-year parole term. This would leave Carreon with a heavier sentence than the one he currently bears. The trial court was lenient in sentencing Carreon to a period of probation, which when added to the terms of imprisonment and parole that he had already served, amounted to less than the total period of his prior sentence. We think Carreon has no complaint on this score.

For all of the foregoing reasons, the judgment of conviction is affirmed.

Affirmed.