UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony R. FIELDS,
Defendant-Appellant.

No. 81–3064.

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1982.
Decided Sept. 14, 1982.
Certiorari Denied Dec. 13, 1982.
See 103 S.Ct. 573.

Before PELL and BAUER, Circuit Judges, and DECKER,* Senior District Judge, sitting by designation.

DECKER, Senior District Judge.

Defendant-Appellant Anthony R. Fields appeals from his conviction on three counts of knowingly acquiring and possessing food stamp coupons in a manner not authorized by law. 7 U.S.C. § 2024(b). Fields claims numerous errors by the district court, particularly with respect to his defense of entrapment. We affirm.

Anthony Fields is the proprietor of the D & P Variety Store in Indianapolis, Indiana. The D & P Variety Store sells neither food nor other retail merchandise, and is not authorized by the United States Department of Agriculture to accept food stamps.[1] Viewed in the light most favorable to the government, see *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), the evidence established that on February 18, 1981, Robyn Stewart and Ernest Stanford, Jr., two federal undercover agents from the Department of Agriculture and the Treasury Department's Bureau of Alcohol, Tobacco and Firearms, respectively, met with Fields outside of his store and offered to sell him a quantity of food stamps at a discount, which he could then redeem illegally for cash. It is undisputed that prior to the time of that meeting, the agents had no knowledge that Fields had actually dealt illegally in food stamps in the past. Fields' name arose in that connection, however, during an unrelated investigation by the Treasury Department into illegal firearms sales, when one of the subjects of that investigation, Eugene Carter, told undercover agents that he knew someone, Fields, who might be willing to deal illegally in food stamps.[2]

Pete Pappas, Indianapolis, Ind., for defendant-appellant.

Roger L. Duncan, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

* Of the Northern District of Illinois.

1. The record, in fact, fails to reveal what, if anything, was sold at the D & P Variety Store.

2. Carter was indicted with Fields on one count of unlawful acquisition or possession of food stamps, and one count of conspiracy to violate 7 U.S.C. § 2024(b). Before trial, Carter pleaded guilty to one count of unlawful acquisition and possession, and the government dropped the conspiracy charges against both defendants. Carter was given a three-month prison sentence.

Fields told Agents Stewart and Stanford that he was interested in dealing in the stamps and, when asked, indicated to them that he was willing to do so on a regular basis. Agent Stewart then proposed to sell Fields $2600.00 in food stamps for $1300.00. After Fields made a telephone call to check the serial numbers of the stamps against the food stamp alert bulletin (or "hot sheet"), and found that the stamps were "cool," he agreed to the purchase, and the parties completed the transaction.

On February 26, 1981, Agents Stewart and Stanford returned to the D & P Variety store with $1950.00 in food stamps. After some dickering about price, Fields purchased the stamps from the agents for $800.00. On March 26, 1981, the parties met again, and the agents sold Fields $1300.00 in food stamps for $530.00.

On April 24, 1981, the agents brought $17,225.00 in food stamps to Fields' store. Fields only agreed to purchase approximately $6100.00 in stamps, however, for $2000.00. While the money was on the counter and Fields was holding the bag containing the stamps, counting them, federal agents entered the store and arrested Fields.

The jury found Fields guilty of unlawful acquisition and possession of food stamps based on the transactions of February 26, March 26, and April 24, 1981, and found him not guilty of the same charges for the transaction of February 18. Fields claims that he was entrapped as to all four of the transactions. First he has argued that the district court erred in denying his motion for a directed verdict on all counts because the evidence was insufficient to establish beyond a reasonable doubt that he was not entrapped, a fact which he claims was supported by the jury's acquittal for the February 18 transaction. He has also argued that the district court improperly instructed the jury on the entrapment defense; that the court erred in its responses to questions sent out by the jury during deliberations; and that the evidence was insufficient to sustain a conviction for the April 24 transaction, when he and Stanford were interrupted before the transaction was completed. Finally, Fields claims that the district court's sentence of two concurrent three-year prison terms, followed by five years of probation, was improper in light of the three-month sentence given to Carter. The court will consider each of these arguments in turn.

I.

Fields' first claim is that the evidence presented at trial was insufficient to establish, beyond a reasonable doubt, that he was not entrapped by the government agents. At trial, Fields admitted to having participated in the transactions for which he was charged, but claimed that he was not at all predisposed to do so prior to being approached by the agents and he did so here only as a result of the government's inducement. In support of his claims, Fields testified that he had never dealt illegally in food stamps prior to February 18, 1981.

This court has recently held that where a defendant has introduced evidence of both government inducement and a lack of predisposition on the part of the defendant to commit the offense charged, the government must introduce "sufficient evidence from which a jury could conclude beyond a reasonable doubt that [the] defendant was predisposed to commit the offenses." United States v. Hinkle, 637 F.2d 1154, 1158 (7th Cir. 1981). The term "predisposition" refers to whether the defendant had a readiness and willingness to commit the offenses charged, or whether the government "implant[ed] in the mind of an innocent person" the disposition to commit the offense. Sorrells v. United States, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932). See also Sherman v. United States, 356 U.S. 369, 375, 78 S.Ct. 819, 822, 2 L.Ed.2d 848 (1958). Predisposition may be established by evidence of a defendant's personal background, and by evidence of a defendant's conduct before or after the commission of the offense. United States v. Carreon, 626 F.2d 528 (7th Cir. 1980); United States v. Townsend, 555 F.2d 152 (7th Cir.), cert. denied, 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 184 (1977).

■ In this case, there was ample evidence of Fields' predisposition before, during and after the commission of the offenses for which he was convicted. At trial, Fields testified that prior to being approached by the agents, he dealt in illegal lottery tickets as a means of support. When the agents presented Fields with the opportunity to deal illegally in stamps, too, Fields immediately indicated his willingness to do so on a regular basis, provided that the stamps were not on the hot sheet. At the agents' first meeting with Fields, he gave them two phone numbers where he could be reached when the agents acquired more stamps. Moreover, Fields showed no reluctance about participating in the illegal transactions, as long as he was able to "milk" the stamps for all he could without getting caught. Each time he dealt with the agents, Fields negotiated a lower price for the stamps, explaining that he needed to pay off the individuals whose assistance was required to redeem the stamps, while keeping for himself a profit sufficient to justify his participation in the scheme. Such conduct on Fields' part, indicating his familiarity with the operation of a criminal enterprise and his willingness to participate in the stamp "scam," when combined with his illegal activities prior to the government's undercover investigation, constitutes sufficient evidence of Fields' predisposition to support a conviction. *See Sherman v. United States, supra.*

The Ninth Circuit has recently addressed the issues of entrapment and criminal predisposition in the context of the government's food stamp investigations. In *United States v. Abushi*, 682 F.2d 1289 (9th Cir. 1982), four individuals were convicted of illegally acquiring and redeeming food stamps after special agents of the Agriculture Department sold them several thousand dollars in food stamps in undercover transactions resembling those in issue here. Like Fields, defendants in *Abushi* claimed unsuccessfully at trial that they had been entrapped by the federal agents. The Ninth Circuit affirmed the convictions, finding considerable evidence of predisposition similar to that presented here:

> "[T]here is substantial evidence to establish the predisposition of all four appellants. They showed little, if any, real resistance to participation in the food stamp transactions when they were proposed by the government agents, nor were they concerned about the illegal nature of that activity.
>
> . . . .
>
> "It is clear from [one agent's] testimony that all she needed to do to effectuate a given sale was to inform Abushi that she was carrying some stamps which she wanted to sell, and negotiate with him over the price."

At 1298. The Ninth Circuit's conclusion in *Abushi* is particularly appropriate in the case at bar:

> "The appellants have not pointed to any evidence indicating a reluctance on their part to engage in the illegal activity. To the contrary, the record is replete with instances where the appellants appeared eager to negotiate then and in the future. Although the government made the initial contact with the appellants, this is merely evidence that the government furnished the opportunity for the commission of a crime, not that the appellants were entrapped. *United States v. Glaeser*, 550 F.2d 483, 487 (9th Cir. 1977)."

At 1298.

The court finds that there was sufficient evidence of predisposition in Mr. Fields' case for a rational factfinder to conclude, beyond a reasonable doubt, that Fields was not entrapped.

■ Addressing briefly Fields' suggestion that the jury's acquittal on the February 18 charges based on entrapment in some way requires a reversal of his conviction for the subsequent offenses, the court knows of no per se rule which provides that the taint of a first entrapment requires judgments of acquittal as to all subsequent transactions. *See, e.g., United States v. West*, 511 F.2d 1083 (3d Cir. 1975), *United States v. Hill*, 481 F.Supp. 558, 560–61 (E.D. Pa.1979), *rev'd on other grounds*, 655 F.2d 512 (3d Cir. 1981). To the contrary, as long

as the evidence was sufficient to support the counts on which the defendant was actually convicted, a jury verdict reflecting compromise or even inconsistency is permissible and legitimate. *United States v. Jacobs*, 632 F.2d 695, 697 (7th Cir. 1980). In this case, moreover, the jury verdict was not necessarily inconsistent. Even if the jury found Fields not guilty of the February 18 offense because they found the evidence insufficient to establish beyond a reasonable doubt that Fields had not been entrapped *on that date*, this court finds that the additional evidence of Fields' post-February 18 conduct, including the readiness with which he entered into subsequent transactions and the manner in which he negotiated successively lower prices for the stamps so that he could make the proper payoffs, clearly establishes the requisite predisposition as to all subsequent transactions. *See Abushi, supra; Carreon, supra.* Therefore, the court rejects Fields' arguments that his conviction for only the subsequent offenses was improper.

## II.

■ Fields has argued that the district court's jury instructions did not convey to the jury the precise and specific elements of the entrapment defense because they failed to instruct the jury on the meaning of "predisposition," and inform them that the government bore the burden of proving Fields' predisposition beyond a reasonable doubt. Therefore, Fields claims, the district court erred in rejecting the entrapment instructions which he submitted.

The district court gave the following entrapment instructions to the jury:

"*Instruction No. 20.* One of the issues in this case is whether the Defendant was entrapped. A Defendant who has been entrapped must be found not guilty.

"If the defendant had no prior intent or predisposition to commit the offense charged, and was induced or persuaded to do so by law enforcement officers or their agents, then he was entrapped. If, however, the Defendant had a prior intent or predisposition to commit the offense charged, then he was not entrapped, even though law enforcement officers or their agents provided a favorable opportunity to commit the offense, made committing the offense easier, or even participated in acts essential to the offense.

"In determining whether the Defendant had a prior intent or predisposition to commit the offense charged, you may consider the personal background of the Defendant as well as the nature and degree of any inducement or persuasion of the Defendant by law enforcement officers or their agents."

"*Instruction No. 20–A.* The issue of entrapment has been raised by the Defendant, Anthony R. Fields. He does not dispute that he entered into transactions prohibited by statute. The government must prove beyond a reasonable doubt that the Defendant was not entrapped."

Instruction No. 20 is identical to Instruction 4.04, "Entrapment," *Federal Criminal Jury Instructions of the Seventh Circuit,* (prepared by the Committee on Federal Jury Instructions of the Seventh Circuit, and approved in principle by the Judicial Council of the Seventh Circuit, 1980) [West]. *See United States v. Read,* 658 F.2d 1225, 1237 (7th Cir. 1981). The court finds no error in the district court's instructions.

Contrary to Fields' arguments, it is clear from the express language in the district court's instructions that the government bore the burden of proving beyond a reasonable doubt that Fields had not been entrapped, and that that required a finding, beyond a reasonable doubt, that Fields was predisposed to commit the offenses with which he had been charged. *See United States v. Johnson,* 605 F.2d 1025 (7th Cir. 1979), *cert. denied,* 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). Furthermore, the court finds that the substance of the instruction, which described entrapment in terms of "prior intent or predisposition," and told the jury that they could consider both the background of the defendant and the nature and degree of the government's inducements in determining whether he was predisposed to commit the offenses,

presented an accurate statement of the law concerning entrapment. *See Sherman v. United States*, 356 U.S. at 382, 78 S.Ct. at 825 (Frankfurter, J., concurring); *United States v. Abushi, supra; United States v. Hinkle, supra; United States v. Carreon, supra.* Under those circumstances, we find that the district court did not err in refusing to give the defendant's requested instructions. *United States v. Park*, 421 U.S. 658, 675, 95 S.Ct. 1903, 1913, 44 L.Ed.2d 489 (1975).

As a corollary to Fields' challenge to the adequacy of the jury instructions, Fields has argued that the district court erred in its treatment of two of the questions which the jury sent the judge during deliberations. At one point in the deliberations, the jury sent out a note asking for a legal dictionary. The court refused the request. Later, the jury sent out another note, asking "Does prior intent or predisposition mean prior to the proposal or prior to the offense?" The court answered by referring the jury to the court's original entrapment instruction: "The members of the jury are required to rely on their own observations and experiences in making a judgment. Further, careful reading of Instruction No. 20 should assist you." Fields claims that the jury's questions reflected confusion about the entrapment defense, and that the district court erred in failing to give a clarifying instruction on the meaning of predisposition.

A review of the proceedings in the trial court reveals that counsel for both the government and Fields were consulted before the district court responded to either of the above questions, and both sides agreed to the answers which were given. *See* Transcript of Hearing on Clarification of Record Re Jury Notes, January 20, 1982 at 3–5. If the defendant believed that the proper response to the jury's second question above was a clarifying instruction rather than a reference to the original entrapment instruction, that concern should have been raised before the district court at the time the question was first raised, and it will not be entertained for the first time on appeal.

Addressing the jury's questions themselves as evidence of juror confusion, the court finds that at best, the questions indicated a desire for a clarifying instruction, and not juror confusion. The jury's notes simply do not establish that the original instructions were "so vague or ambiguous as to reasonably permit misinterpretation of the entrapment instruction." *United States v. Johnson*, 605 F.2d at 1029. The questions themselves do not establish that the district court's instructions were improper.

### III.

Fields has argued that the evidence of the April 24, 1981, transaction was insufficient to sustain a conviction because the transaction in which he was to have acquired the food stamps was never completed. It was not completed, he maintains, because Agent Stanford never took the money for the stamps, and Fields never exercised control over the stamps. The court disagrees.

Read in the light most favorable to the government, the evidence at trial established that the April 24 transaction was interrupted by the arresting officers only after Fields had taken a bag from Agent Stanford containing approximately $6100.00 in food stamps, and had begun counting the stamps in the bag. Prior to doing so, the agents testified, Fields had agreed to purchase the stamps for $2000.00 in cash. According to Agent Stanford's testimony, moreover, as Fields took the stamps, he set the money on the counter and said: "Here is the money for the stamps." Based on that evidence, this court believes that a rational jury could have concluded beyond a reasonable doubt that on April 24, Fields "acquire[d]" or "possess[ed]" food stamps in a manner not authorized by law. 7 U.S.C. § 2024(b).

### IV.

Finally, Fields has challenged the severity of the district court's concurrent three-year prison sentences and probation, when

compared with the three-month sentence given to co-defendant Carter, who pleaded guilty to one count of unauthorized acquisition. Fields contends that he was issued the harsher sentence because he refused to plead guilty.

The standard of review to be applied to a district court's sentencing decisions is whether the trial court abused its discretion. Beyond that, it is not the function of the appellate court to review the sentence imposed on a criminal defendant. *See United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978); *United States v. Main*, 598 F.2d 1086 (7th Cir.), *cert. denied*, 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 211 (1979). This court has held repeatedly that the mere fact that a defendant who proceeded to trial received a heavier sentence than did a co-defendant who pleaded guilty does not establish an abuse of the trial court's discretion. *E.g., United States v. Santiago*, 582 F.2d at 1137; *United States v. Melendez*, 355 F.2d 914 (7th Cir. 1966).

In this case, Fields has produced no evidence that he was penalized for pleading not guilty except for the fact of the disparate sentence itself. Since this court can find no other evidence in the record which even might support an inference of disparate treatment as a result of Fields' not guilty plea, and the trial court's sentence was within the limits prescribed for the offenses for which Fields was convicted, 7 U.S.C. § 2024(b), the district court's sentence will be left undisturbed.

## V.

For all of the reasons stated above, the defendant's conviction is

AFFIRMED.