**UNITED STATES of America, Appellee,**

v.

**Paul Mark VAN SLYKE, Appellant.**

No. 91–3807.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1992.

Decided Oct. 5, 1992.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 17, 1992.

Peter B. Wold, Minneapolis, Minn., argued, for appellant.

Michael W. Ward, Asst. U.S. Atty., Minneapolis, Minn., argued, for appellee.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Paul Mark Van Slyke appeals from a

judgment of the district court[1] entered upon a jury verdict finding him guilty of one count of distributing marijuana in violation of 21 U.S.C. § 841(a). We affirm.

James Frye worked as an undercover agent at the Minneapolis, Minnesota post office. His instructions were to associate with drug users and dealers and report his associations back to the postal inspectors. The government's version of the events is as follows. In late December 1989 or early January 1990 Frye met Van Slyke, who worked at the post office, at a nightclub frequented by postal employees. Frye and Van Slyke played pool and drank beer together. They also discussed their drug use. On May 10, 1990 Frye asked Van Slyke if he could obtain cocaine, and Van Slyke responded that he would see what he could do. On the next day Van Slyke sold him one-half gram of cocaine. The alleged transaction, however, was not recorded on audio or video tape.

Frye then asked Van Slyke if he could obtain more cocaine. Van Slyke responded that he probably would have trouble getting more cocaine, but probably could get some marijuana. In June 1990 Van Slyke arranged for Frye to buy a quarter ounce of marijuana on the nightclub's parking lot from a man named "Michael."

Between June and December 1990, Frye had frequent contact with Van Slyke and asked to buy marijuana from Van Slyke a few times. On December 30 Frye told Van Slyke he was looking for some more marijuana and that he had buyers who would pay "high dollar." On December 31 Van Slyke sold Frye approximately twenty-five grams of marijuana. He told Frye it was "good stuff," with no "sticks." When Frye asked if there was "any chance of getting more" if he sold the marijuana, Van Slyke responded that his source had more of the same kind of marijuana, but would have a better quality of marijuana in a few days. Van Slyke, however, informed Frye the sale was short a couple of grams,

but that Van Slyke could make each bag a gram lighter.

On Friday, January 25, 1991, Van Slyke agreed to sell Frye more marijuana, but failed to arrive at the designated time and place. Later in the day, the following conversation took place:

Frye: You've ... [messed] up my whole break, sitting in the ... lobby.

Van Slyke: I'm sorry.

Frye: What's going on?

Van Slyke: I missed the guy, too.

Frye: You missed him?

\* \* \* \* \* \*

Frye: So when are you gonna do it. Monday or what?

Van Slyke: Ah, tomorrow.

Frye: Tommorrow, ... I might find something else tonight, because I'll take it Monday if you want to.

Van Slyke: Alright.

Frye: I gotta go look for something else.

Van Slyke: I'll get it ahead of time.

Frye: None of this sitting on the job.

Van Slyke obtained the marijuana and was able to deliver it on Monday, January 28, as agreed. A tape recording of the transaction reveals the following:

Frye: ... Ya got three quarters here?

Van Slyke: No, its a half and a quarter.

Frye: Half and a quarter? Uh, doesn't look too bad. Do these weigh, Paul?

Van Slyke: It should.

Frye: Okay.

Van Slyke: ... went faster than hell though.

Frye: It did huh?

Van Slyke: Two pounds. He's got more coming though.

Frye: Does he? Okay. Well yeah, maybe I'll try to get an ounce you know next time I'll get a full ounce.

Van Slyke: Yeah, or maybe even a quarter pound.

Frye: Yeah, that'd be, sounds good.

Van Slyke: Get a little better deal.

Frye: One

**1.** The Honorable Paul A. Magnuson, United States District Judge for the District of

Minnesota.

Van Slyke: Make yourself

Frye: Two

Van Slyke: some more money, ya know?

\* \* \* \* \* \*

Frye: Yeah, just don't stand me up like the last time or I'll kill you man.

Van Slyke: Yeah, I got hung up that's all.

Frye: Yeah, all right I just got written up for it you know.

Frye testified that after this transaction Van Slyke repeatedly contacted him about buying more marijuana and on February 19 sold him marijuana.

Van Slyke testified in his defense. He denied selling the cocaine in May 1990. He, however, admitted using marijuana and selling marijuana to Frye on December 31, January 28, and February 19. He testified that Frye had asked him at least once a week to buy marijuana. He explained that he finally agreed to sell marijuana on December 31 as a favor because Frye had bought him beers and "said he really needed something for a party." Van Slyke stated that although he had agreed to sell marijuana to Frye on January 25, he did not show up because he no longer wanted to be involved with Frye. Van Slyke claimed he made the sale on January 28 only after Frye had threatened to kill him because he failed to deliver on January 25. Van Slyke also stated he believed he was supplying marijuana for Frye's personal use and asserted he had not profited from the sales.

Van Slyke was indicted for the May 1990 cocaine sale (Count 1), the December 31 marijuana sale (Count 2), and the January 28 marijuana sale (Count 3). The district court instructed the jury on entrapment. During deliberations, the jury sent several notes to the court, including a note inquiring whether "for Counts 2 and 3 do we need to see entrapment individually or do we need to see entrapment only on Count 2 and will it also cover Count 3"? The court responded by giving a supplemental instruction which informed the jury that it could find Van Slyke was entrapped "in the first instance and therefore all criminal acts following were subject of the initial entrapment," or could find "that there was entrapment as to some of the acts, but no entrapment as to other acts." The instruction was based on *United States v. North*, 746 F.2d 627, 630 (9th Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 832 (1985), in which the Ninth Circuit held that an "initial entrapment, assuming it existed, did not immunize [a defendant] from criminal liability for subsequent transactions that he readily and willingly undertook." *See also United States v. Dougherty*, 810 F.2d 763, 769 (8th Cir. 1987) (" 'no per se rule ... provides that the taint of the first entrapment requires judgments of acquittal as to all subsequent transactions' ") (quoting *United States v. Fields*, 689 F.2d 122, 125–26 (7th Cir.), *cert. denied*, 459 U.S. 1089, 103 S.Ct. 573, 74 L.Ed.2d 935 (1982)); *United States v. Wells*, 506 F.2d 924, 925–26 (5th Cir.1975) (same).

The jury acquitted Van Slyke of the cocaine charge and of the December 31 marijuana sale, but found him guilty of the January 28 sale. The court sentenced Van Slyke to two years probation.

On appeal Van Slyke argues that the not-guilty verdict on Count 2 was inconsistent with the guilty verdict on Count 3. He reasons that the jury must have found that he was entrapped as to Count 2, and that, as a matter of law, this court should find that he was entrapped as to Count 3. We refuse to do so.

Van Slyke acknowledges that in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Supreme Court reaffirmed the rule announced in *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), that "[c]onsistency in the verdict is not necessary." In *Dunn*, the Supreme Court explained that "either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Id.* (quotation omitted). The Court believed that the acquittal might have been the product of leniency. *Id.*

Van Slyke argues this case should be an exception to *Dunn*, because the jury notes suggest that the inconsistent verdicts were not a product of lenity but of error. Van Slyke, however, ignores that in *Powell* the Supreme Court expressly rejected "as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them." 469 U.S. at 66, 105 S.Ct. at 477. The Court explained that "[s]uch an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *Id.* The Court believed that defendants were "afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." *Id.* at 67, 105 S.Ct. at 477.

Applying the rationale of *Powell*, this court in *United States v. Dougherty*, 810 F.2d at 769, rejected an argument made similar to the one here. In *Dougherty*, a defendant, who had argued entrapment, was acquitted of one count of unlawful purchase of food stamps, but convicted on subsequent counts. This court stated "as long as the evidence was sufficient to support the counts on which the defendant was actually convicted, a jury verdict reflecting compromise or even inconsistency is permissible and legitimate." *Id.* (quoting *United States v. Fields*, 689 F.2d at 125–26). Similarly, in *United States v. Williams*, 923 F.2d 115, 116 (8th Cir.1991), this court held that an acquittal on conspiracy did not preclude a conviction on attempt where entrapment was the sole defense.

Moreover, despite the jury's notes, we are unpersuaded by Van Slyke's contention that the jury's verdict of acquittal on Count 2 was not the product of leniency. "The affirmative defense of entrapment has 'two related elements: government inducement of the crime, and [the defendant's] lack of predisposition ... to engage in the criminal conduct.'" *United States v. Stanton*, 973 F.2d 608, 609 (8th Cir.1992) (quoting *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988)). "The defendant carries the initial burden of presenting some evidence that he or she was induced by government agents to commit the offense." *United States v. McGuire*, 808 F.2d 694, 696 (8th Cir.1987) (per curiam). "The inducement element of entrapment requires more than establishing that the government 'solicited, requested or approached the defendant to engage in criminal conduct.'" *United States v. Young*, 954 F.2d 614, 616 (10th Cir.1992) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1165 (10th Cir.1986)). Although inducement may arise from " 'pleas based on need, sympathy, or friendship[,]' " a defendant must demonstrate "government conduct that 'creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense.'" *United States v. Stanton*, 973 F.2d at 609 (quoting *United States v. Mendoza–Salgado*, 964 F.2d 993, 1004 (10th Cir.1992)). As to the December 31 sale, Van Slyke testified that he had succumbed to Frye's requests as a favor to a friend who had bought him some beers and needed some "pot" for a party. In similar circumstances, juries have rejected entrapment defenses. For example, in *United States v. Young*, 954 F.2d at 614, the Internal Revenue Service had placed an undercover female informant at an IRS site to investigate suspected drug use. She became friendly with a male defendant, who had hopes that the relationship would develop into a romantic one. During a four-month period, they had regular contact at work and exchanged numerous telephone conversations in which they discussed their mutual marijuana habit and the availability of marijuana. The court found insufficient evidence of inducement, noting that "[o]n these facts ... the relationship [was not] such that defendant would feel compelled to respond affirmatively" to the informant's offer to sell marijuana. *Id.* at 617. *See also United States v. Ford*, 918 F.2d 1343, 1348 (8th Cir.1990) ("friendship with the confidential informant is not evidence of entrapment").

■ As to Count 3, we also believe that Van Slyke failed to prove that Frye induced him to make the sale. Van Slyke testified that although he had agreed to sell marijuana to Frye on January 25, he changed his mind and only sold marijuana to Frye on January 28 because Frye had threatened to kill him. The tape recordings, however, contradict his testimony. On January 25, Van Slyke did not tell Frye of his alleged change of heart or even express any reluctance to making future sales. Instead, he told Frye he did not have the drugs because he had missed his source and offered to supply marijuana the next day with the assurance that he would get the marijuana ahead of time. In addition, Frye's statement that "just don't stand me up like the last time or I'll kill you" was not made until January 28 and was made only after Van Slyke had encouraged Frye to buy a quarter of a pound of marijuana to get a "better deal." Moreover, even if Frye had made the statement earlier, the jury would have been entitled to evaluate it in context and discount the remark.

Because we find insufficient evidence of inducement, we need not address Van Slyke's argument that the government failed to prove that he was predisposed to distribute marijuana.[2] *See United States v. Stanton*, 973 F.2d at 610. We, however, note this court has held that a defendant's ability to acquire drugs and familiarity with drug terms are probative of a defendant's predisposition to engage in drug distribution. *United States v. Crump*, 934 F.2d 947, 956–57 (8th Cir.1991); *United States v. Mendoza*, 902 F.2d 693, 696 (8th Cir.1990). We have also rejected an entrapment defense where a defendant claimed, as did Van Slyke, that he was a drug user who merely made sales to a fellow user and did not profit from the sales. *See United States v. Williams*, 873 F.2d 1102, 1104 (8th Cir.1989).

As indicated, the judgment of the district court should be, and is, affirmed.

---

**2.** Because we are unwilling to assume that Van Slyke was entrapped as to Count 2, we do not address Van Slyke's suggestion at oral argument that *Jacobson v. United States*, — U.S. —, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), has altered the holding of the cases cited on page 1161 that an initial entrapment does not necessarily immunize subsequent transactions. In *Jacobson,* the Supreme Court reversed a conviction for receiving child pornography, holding that the government had "failed to establish that petitioner was independently predisposed to commit the crime for which he was arrested." *Id.* at —, 112 S.Ct. at 1537. We note that in *Jacobson* "[i]nducement [wa]s not at issue...." *Id.* at —, 112 S.Ct. at 1540 n. 2.