In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1684

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

ABRAHAM E. KILLINGSWORTH,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06 CR 30140—**G. Patrick Murphy**, *Judge.*

ARGUED SEPTEMBER 5, 2007—DECIDED NOVEMBER 13, 2007

Before EASTERBROOK, *Chief Judge*, and WOOD and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge.* The district court granted Abraham Killingsworth's motion to dismiss an indictment against him with prejudice because his rights under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, were violated. The government conceded the violation but argued that the dismissal should be without prejudice. The court sided with Killingsworth and entered the dismissal order with prejudice. Today we resolve the government's appeal of that decision.

Although the "facts" in this case have yet to be tested at trial, the government claims that the following events form the basis of charges it filed against Killingsworth.

On September 25, 2006, Killingsworth met with a fellow named Ball, hoping to buy two ounces of cocaine. After entering Ball's vehicle to complete the transaction, Killingsworth realized that Ball had more cocaine with him than Killingsworth was expecting to purchase. Killingsworth seized this opportunity and decided to rob Ball by displaying a chrome .38 caliber revolver and taking the package of cocaine from Ball. Killingsworth then left Ball's vehicle and got into another vehicle, driven by an unnamed individual. Ball proceeded to flag down two Venice, Illinois, police officers who were on routine patrol in the area. Ball told the officers that he had just been robbed and pointed to the vehicle that Killingsworth had entered. The police started to follow the car, but Killingsworth got out of it and started to flee on foot. While running, he dropped the package of cocaine and the gun, both of which the officers retrieved after apprehending him.

The federal government, acting through the DEA, got involved in the case, and a criminal complaint was filed in the Southern District of Illinois on September 27, 2006, charging Killingsworth with one count of possession with intent to distribute over 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and one count of possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Killingsworth appeared before Magistrate Judge Proud on September 28, 2006, and entered a plea of not guilty. Killingsworth later waived his rights to preliminary and detention hearings on October 2, 2006, in an appearance before Magistrate Judge Wilkerson. On October 19, 2006, a grand jury indicted Killingsworth on the two counts charged in the complaint. A third count seeking to forfeit the firearm involved in the offense was added on. In mid-October, Killingsworth apparently agreed to cooperate with the government. He signed a proffer agreement on October 26,

2006. On November 1, 2006, the government forwarded discovery materials to Killingsworth's counsel.

Obvious from this chronology—and for reasons still unclear to us—an arraignment on the indictment was never scheduled. As a result, Killingsworth did not receive a trial within the time period required by the Speedy Trial Act. On January 4, 2007 (by the government's count,[1] 3 days after the speedy trial clock had run), Killingsworth filed a motion to dismiss the indictment with prejudice.[2] The government, as we said, conceded that the Speedy Trial Act was violated but asked for dismissal *without* prejudice.

The district court held a hearing on the motion to dismiss. During the hearing, the government offered two explanations for the violation. First, it stated that, historically, it had never had to request an arraignment in a criminal case when an individual had been indicted, even when a complaint had been filed first; the magistrate judge had always provided a date. Second, the government claimed that it had contacted the magistrate judge's chambers at least twice within the speedy trial time to inquire about an arraignment but had received no reply.

---

[1] The government bases its calculations on an exclusion of 3 days from October 20 to 23 while a motion was pending. Whether the period of delay was 3 or 6 days is immaterial to our discussion.

[2] Once a motion like this is filed, the speedy trial clock stops ticking. Therefore, any time that passes before the motion is resolved is excluded. But that said, we find it disturbing that the hearing on the motion—a rather simple one, we think—was not conducted until February 26, 2007, a full 54 days after it was filed. We hope the judges—district and magistrate—in the Southern District of Illinois will take preventive action so this sort of delay doesn't repeat itself in other cases.

In response, the district judge tried to determine exactly what happened by taking a recess to speak to the magistrate judge and his clerk. When the judge returned, he informed the parties that the clerk did not recall any messages from the government and that "there is no way really to go behind that and find out what happened."

The judge then turned to the issue of whether to dismiss the indictment with or without prejudice. He noted that the case was a serious one and that if he dismissed it with prejudice, Killingsworth might walk away without punishment if the state did not bring charges.[3] He also stated that it was impossible to find out whether the court or the government was at fault for the violation. Ultimately, the court sided with Killingsworth, emphasizing that "whether the fault lies with the judicial side of the matter or whether it involves the fault of the prosecutor is quite beside the point" because Killingsworth himself was not responsible for the delay.

On appeal, the government alleges error in the district court's application of the factors specified in the Speedy Trial Act. In determining whether to dismiss a case with or without prejudice, the Act requires the district judge to consider (1) the seriousness of the offense, (2) the facts and circumstances which led to the dismissal, and (3) the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice. 18 U.S.C. § 3162(a)(2).

We review the district court's dismissal with prejudice for an abuse of discretion. *United States v. Taylor*, 487 U.S. 326, 335, 108 S. Ct. 2413, 2419 (1988); *United States v. Arango*, 879 F.2d 1501, 1508 (7th Cir. 1989). However,

---

[3] At the time of oral argument, the state still had not brought charges.

because the Speedy Trial Act requires the court to consider explicit factors when deciding whether to dismiss with or without prejudice, it confines the district court's discretion more narrowly than in cases where no factors exist. *Taylor*, 487 U.S. at 344, 108 S. Ct. at 2423. As a result, "[a]lthough the role of an appellate court is not to substitute its judgment for that of the trial court, review must serve to ensure that the purposes of the Act and the legislative compromise it reflects are given effect." *Id.* at 336, 108 S. Ct. at 2419. We must "undertake more substantive scrutiny to ensure that the judgment is supported in terms of the factors identified in the statute." *Id.* at 337, 108 S. Ct. at 2420. We now turn to that task.

The first factor, the seriousness of the offense, required little consideration because Killingsworth correctly conceded that it militated for a dismissal *without* prejudice. We think the district court undervalued this factor by stating that while the offense was serious and involved a gun, there was no murder or injury, as there had been in *United States v. Fountain*, 840 F.2d 509 (7th Cir. 1988). In *Taylor*, the Supreme Court found an abuse of discretion where, among other things, the district court failed to explain how the seriousness of the offense factored into its decision to dismiss with prejudice. 487 U.S. at 344, 108 S. Ct. at 2423. Neglecting to find that the first factor favored dismissal without prejudice, the district court committed a similar error.

Regarding the second factor, the facts and circumstances leading to dismissal, the court found that "[t]he facts and circumstances of the case which lead to the dismissal could be that there is a hole here in the Court's administrative side of things." Indeed, the judge stated that he would be talking to the magistrates to determine if there was a communication problem and trusted that the government would investigate the matter as well. However, the judge stressed that, whether the court or the

government was to blame, Killingsworth himself did nothing wrong. He concluded that this was "not a case where [the defendant] was trying to sit on or hide or ambush somebody."

We think that the district court overemphasized Killingsworth's conduct and gave insufficient weight to the fact that the court itself may have been at fault for failing to move the case along. In addition, Killingsworth conceded that the government did not intentionally cause the delay and that he suffered no prejudice. In similar circumstances, we have found that a dismissal without prejudice was appropriate. *See Arango*, 879 F.2d at 1508; *Fountain*, 840 F.2d at 512-13; *United States v. Hawthorne*, 705 F.2d 258, 261 (7th Cir. 1983). Moreover, a trial in this case was probably never contemplated by the parties,[4] and the delay due to the inadvertent violation was relatively brief. While we agree with the district court that the government should take measures to prevent repetitions of this kind, the absence of bad faith by the government and the lack of prejudice to the defendant nudge this factor in favor of dismissal without prejudice.

Finally, the district court considered the third factor, the impact of a reprosecution on the administration of the Act and on the administration of justice. The court emphasized that "the reason we have a statute is to enforce the Defendant's right to a Speedy Trial, and that's the whole point." The judge overlooked the fact that the violation was already being sanctioned by a dismissal. As *Taylor* explained, "the [Speedy Trial] Act does not require dismissal with prejudice for every violation. Dismissal without prejudice is not a toothless sanction." 487 U.S. at 342, 108 S. Ct. at 2422. Putting it another way, the

---

[4] We make this inference because Killingsworth signed a proffer agreement with the government shortly after the indictment.

fact that a violation occurred does not alone tip the scales in favor of a dismissal with prejudice. On the contrary, considering the seriousness of the offense, minor delay, and lack of bad faith shown (or even alleged) in this case, "the purpose of the Act would not be served by requiring the court to impose the maximum sanction for a minimum violation." *Hawthorne*, 705 F.2d at 261 (citing *United States v. Regilio*, 669 F.2d 1169, 1172-73 (7th Cir. 1981)). The third factor therefore also should have favored dismissal without prejudice.

For the court, the "bottom line" was that Killingsworth was "cooperating, trying to get an arraignment, sitting in jail, [and] didn't get it." We appreciate the court's attention to Killingsworth's perspective, but whether a defendant is detained pending trial is not an explicit factor of § 3162(a)(2), much less its primary focus. If the fact that a defendant is detained during the period of delay were to dictate the nature of the dismissal, *all* pretrial detainees whose rights were violated under the Speedy Trial Act would receive a dismissal with prejudice. This would render Congress's designation of two types of dismissal largely irrelevant.

In sum, we find that insufficient weight was given to the seriousness of the offense, the lack of bad faith on the part of the government, and the absence of prejudice to Killingsworth. Because its decision to dismiss the indictment with prejudice was not supported in terms of the factors identified in the statute, we find that the court abused its discretion. Now certainly, if the charges against Killingsworth were reinstated after a dismissal without prejudice, the district judge or magistrate at the new arraignment could properly consider that the defendant had spent time in custody on the old indictment. This fact could certainly move the court to consider releasing the defendant on bail while the new case went forward. We are not saying that the court must do that, but it would

be wise to take the prior custody into consideration when considering new terms for the defendant's pretrial situation.

For these reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

A true Copy:

       Teste:

                        _____

                        *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*