# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2324

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSE J. LOERA, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 07 CR 25—**Philip P. Simon,** *Judge.*

ARGUED APRIL 1, 2009—DECIDED MAY 15, 2009

Before POSNER, EVANS, and TINDER, *Circuit Judges*.

EVANS, *Circuit Judge.* Jose Loera, Jr. was riding as a passenger in an SUV when Indiana state police pulled it over for a pair of traffic violations. This case, of course, isn't here because of traffic violations: the rig was packed with cocaine, and the stop was just an excuse to make a drug bust. Despite the precedent authorizing this tactic, *Whren v. United States*, 517 U.S. 806 (1996), Loera contends that the district court should have suppressed the drug evidence. He also asks us to overturn his con-

viction for want of a speedy trial and, in the alternative, to vacate his sentence for what he claims is a violation of the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

A road trip from Atlanta, Georgia, to Valparaiso, Indiana, requires driving some 685 miles. That's not too bad if you have some company and a good radio. But it's downright frightening if your "company" includes 21 kilos of cocaine. That's the position in which Loera found himself when he sat down in the passenger seat of a Ford Explorer on the night of December 13, 2004. The driver, a woman named Angela Bennett, no doubt shared Loera's fears. But money is a pretty good anti-anxiety medication, so, with the promise of a big payday upon delivery, they hit the road.

Everything looked good for a while, but unbeknownst to Bennett and Loera, the DEA had the case scooped. With an undercover agent posing as the ultimate buyer and an informant in on the planning, the DEA knew just about everything, including the identity of the vehicle. For whatever reason, though, the DEA wasn't in a position to intercept the rig on its own—which is where the Indiana State Police came in. A DEA agent phoned Trooper Jason Carmin on December 13 asking him if he could be in the Lafayette area the next day for a "possible vehicle stop." The agent didn't tell Carmin *why* he wanted the car stopped—though a call from the DEA usually means

drugs[1]—but he described the vehicle and its driver, and Carmin agreed to be on the lookout.

Carmin spotted the Explorer the next morning on I-65. Another officer, Trooper Mark Bloom, was patrolling the area with Carmin but had gone down the road a short distance in his cruiser to stop a speeding car. As Bloom was stopping the other vehicle, Carmin saw the Explorer swerve into an exit lane and then quickly swerve back into the main flow of traffic, all without using a turn signal. Carmin immediately gave chase, but as the Explorer passed by Bloom's patrol car (now stopped on the shoulder of the road) it failed to yield to Bloom's vehicle by switching to the left lane—traffic violation number two. Carmin flipped on his lights, and the Explorer came to heel.

The first thing Carmin noticed when he approached the Explorer was Bennett's extreme nervousness. Her

---

[1] According to its Web site, the DEA's mission

> is to enforce the controlled substances laws and regulations of the United States and bring to the criminal and civil justice system of the United States, or any other competent jurisdiction, those organizations and principal members of organizations, involved in the growing, manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States; and to recommend and support non-enforcement programs aimed at reducing the availability of illicit controlled substances on the domestic and international markets.

DEA Mission Statement *at* http://www.usdoj.gov/dea/agency/mission.htm (last visited April 7, 2009).

hands were shaking so badly that Carmin wondered whether she would even be able to retrieve her license from her wallet. Carmin asked Bennett to step out of the vehicle, and she complied. Alone with Bennett behind the Explorer, Carmin explained why he pulled her over and asked where she was driving. Bennett—still visibly nervous—stated that she was driving back to Chicago from Atlanta with her boyfriend (Loera). She said they drove together to Atlanta to visit Loera's sick father for a couple of days. When Carmin left Bennett to question Loera, however, he received a different story. Loera said he was in Atlanta by himself for two weeks—not two days—and that Bennett drove alone from Chicago to pick him up. Though Carmin detected the inconsistencies, he didn't press Loera. Instead, he returned to Bennett, told her she could wait in the Explorer, and walked back to his cruiser. Given the totality of the circumstances—including the DEA call—Carmin radioed Bloom and asked him to bring along his drug dog. In the meantime, Carmin walked back to the Explorer and handed Bennett a written warning for the minor traffic violations. But if Bennett and Loera thought they were off the hook, they were mistaken.

After taking three steps towards his cruiser, Carmin turned on his heels, freezing Bennett in position as she was reaching to put the truck in gear. Playing Columbo to perfection, Carmin had "just one more thing." Nothing major, only a small matter of drugs—were they carrying any? Bennett responded that they were not and agreed to a search of the vehicle. That was the nail in the coffin. Bloom showed up with his drug dog, which alerted to

the presence of cocaine in a hidden compartment built into the floor of the rear cargo area. Carmin lifted the trap door to reveal several packages, wrapped in black duct tape, emanating an "overwhelmingly strong odor of raw cocaine."[2] Loera and Bennett were immediately placed in handcuffs.

If the arrest was swift, however, it was offset by the delay leading up to trial. Nearly two-and-a-half years passed from the date Loera was apprehended (December 14, 2004) to the date his trial began (April 23, 2007). (We bid adieu to Bennett at this point. Though she was tried with Loera—and convicted—she has not appealed.) There was little holdup in the beginning: Loera was indicted in early May 2005, and the court scheduled trial for September. Then the continuances—granted at the request of both parties—started piling up. Coupled with a slew of pretrial motions, the trial date was gradually pushed further and further into the distance. Finally, on December 4, 2006, the court dismissed the indictment for a violation of the Speedy Trial Act, finding that it had improperly excluded a five-month delay from the calculation under 18 U.S.C. § 3161. But the dismissal was

---

[2] Some of the packages had stickers warning "No Fumar," Spanish for "No Smoking." That's curious—powder cocaine is normally snorted, not smoked—but perhaps this was some kind of marketing strategy. Cocaine peddlers often brand their products with logos (authorities have seen everything from Nike "swooshes" to Teletubbies). If that's what these dealers had in mind, it gives no meaning to the expression "mere puffery."

without prejudice (over Loera's objection), so a fresh indictment was handed up on February 7, 2007. Things went much quicker this time. The trial started just two-and-a-half months later, well within the period set forth in the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). Still, Loera says the overall delay was excessive.

Before trial, the parties clashed over the admissibility of the drug evidence. Then, as now, Loera maintained that the evidence should be suppressed for violation of the Fourth Amendment. The court rejected this argument, concluding that there was probable cause to effect the stop; the officers' subjective motivations were irrelevant; the questioning unrelated to the traffic violations did not unreasonably prolong the stop; and Bennett's consent to the search was valid (albeit unnecessary since a dog sniff is not a "search" within the meaning of the Fourth Amendment, *United States v. Place*, 462 U.S. 696, 706-07 (1983), and the canine's alert provided probable cause to search the SUV thereafter). With the drug and other evidence in place, the jury found Loera guilty as charged—guilty of conspiring to distribute cocaine and of possessing five kilograms or more of cocaine with the intent to distribute it, all in violation of 21 U.S.C. § 841(a)(1).

At sentencing, the court found that Loera had been convicted of a felony drug offense in Illinois state court in 2002, mandating a 20-year minimum custodial sentence under 21 U.S.C. § 841(b). Loera argued that the prior conviction should not be counted because the surrounding facts (including whether he was represented

by counsel) were not submitted to the jury and proven beyond a reasonable doubt. The court overruled Loera's objection and sentenced him to the enhanced mandatory minimum of 20 years.

Loera renews on appeal the arguments he made in the district court:  The evidence should have been suppressed; the court should have dismissed the first indictment *with* prejudice and, at any rate, the overall delay ran afoul of his constitutional right to a speedy trial; and finally the court erred in enhancing his sentence for a prior felony drug offense. We take these issues in order.

With its decision in *Whren*, the Supreme Court "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." 517 U.S. at 813; *see also United States v. Stribling*, 94 F.3d 321, 323 (7th Cir. 1996). Nevertheless, Loera tries to distinguish *Whren* on the grounds that in this case, unlike *Whren*, there was no need for a pretext. Armed with the information it had from its undercover agent and informant, the DEA could have detained the vehicle itself. There was no need to involve the state police who, lacking the DEA's information, first had to witness a traffic violation to effect the stop. This supposed distinction is not only tortured, it bears no meaning. If it is permissible to stop a vehicle for a traffic violation where the ulterior motive of looking for drugs is prompted by the occupants' youth and presence in a "high drug area," *Whren*, 517 U.S. at 808, certainly it is permissible to do so when the impetus is a request from a DEA agent of all people. For all intents and pur-

poses, Loera asks us to ignore *Whren*, not because it isn't on point, but because he disagrees with it. As well he should; *Whren* dooms his argument, and we cannot pretend otherwise. There was no violation of the Fourth Amendment.[3]

Which brings us to the second issue—pretrial delay. Here, Loera presents two related arguments: one under the Speedy Trial Act and the other under the Sixth Amendment. In both cases, we review legal conclusions *de novo* and factual findings for clear error. *United States v. Arceo*, 535 F.3d 679, 684 (7th Cir. 2008); *United States v. King*, 338 F.3d 794, 797 (7th Cir. 2003).

Loera first claims that the district court didn't go far enough in its dismissal of the original indictment under the Speedy Trial Act. The court was in the right to throw out the charges, yes, but it should have done so

---

[3] Loera also suggests, in a roundabout way, that the search was illegal because it was not authorized by a warrant. There are two fundamental problems with this take. First, there is the issue of consent. Bennett agreed to the search, and there is no reason to suppose her consent was less than freely given. *See Davis v. Novy*, 433 F.3d 926, 929 (7th Cir. 2006) (explaining that voluntariness is judged by the totality of the circumstances). Second, there is the automobile exception. An officer does not need a warrant to search a vehicle so long as he has probable cause to believe that it contains contraband or evidence of a crime. *United States v. Hines*, 449 F.3d 808, 814 (7th Cir. 2006). If Trooper Carmin didn't have probable cause to believe he would find drugs initially, he definitely did when Bloom's dog alerted to their presence.

with prejudice. However, when a violation of the Speedy Trial Act has occurred—and neither party in this case asks us to revisit the court's finding on this score—the district court has discretion to determine whether to dismiss the indictment with or without prejudice. *United States v. Killingsworth*, 507 F.3d 1087, 1090 (7th Cir. 2007); *United States v. Fountain*, 840 F.2d 509, 512 (7th Cir. 1988). In making this election, the court must consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). Loera concedes that the offense here was serious, weighing in favor of dismissal without prejudice, but he says the court failed to assess properly the parties' relative fault and the burden dismissal would cause him. We disagree. The district court accurately noted that both parties requested continuances; Loera suffered no significant prejudice; and there was nothing to indicate bad faith on the part of the government. As we explained in *Killingsworth*, 507 F.3d at 1091 (citing *United States v. Taylor*, 487 U.S. 326, 342 (1988)), dismissal without prejudice is appropriate in these circumstances. It is a response commensurate with the magnitude of the violation and facts of the case.

The analysis is somewhat different under the Sixth Amendment. *See United States v. White*, 443 F.3d 582, 588 (7th Cir. 2006) (explaining that the constitutional and statutory speedy trial rights "are related but distinct, so that a violation of one may be found without a violation of the other"). The constitutional right to a speedy trial

is "triggered by an arrest, indictment, or some other official accusation." *Arceo*, 535 F.3d at 684. Once the right is triggered, a claimed violation is assessed by considering "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992). The first factor—the length of the delay—is not so much a factor as it is a threshold requirement: "without a delay that is presumptively prejudicial, we need not examine the other factors." *White*, 443 F.3d at 589. Delay approaching one year is presumptively prejudicial. *Id.*

For Loera, this first hurdle is insurmountable. He admits that the delay between the second indictment and trial—a mere two-and-a-half months—falls far short. Yet, he says we should also consider the delay associated with the first indictment. We cannot do that. "The Speedy Trial Clause applies only to an accused," *United States v. Samples*, 713 F.2d 298, 301 (7th Cir. 1983), so when the first indictment was dismissed, Loera was "legally and constitutionally in the same posture as though no charges had been made," *United States v. MacDonald*, 456 U.S. 1, 10 (1982). The delay following the second indictment must be measured independently, and from that perspective it fails. And to the extent Loera would have us find a constitutional violation on the delay after the first indictment alone, the time to make that argument was then, not now. As the district court noted, even though Loera mentioned the Sixth Amend-

ment in his motion to dismiss, his argument revolved entirely around the Speedy Trial Act. In his eight-page supporting memorandum, Loera never uttered a word about the Constitution. By failing to develop the constitutional issue in the context of the earlier case, Loera waived it. *United States v. Kumpf*, 438 F.3d 785, 791 (7th Cir. 2006).

Loera's final argument—that his rights under *Apprendi* were violated because the fact of his prior conviction was not presented to the jury and proved beyond a reasonable doubt—is a nonstarter. Because we are powerless to overrule *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), a decision left intact by *Apprendi*, we must reject Loera's argument on this point.

The judgment of the district court is AFFIRMED.