In the

# United States Court of Appeals
## For the Seventh Circuit

―――――――――――

No. 22-1126

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROMAN T. LLOYD,

*Defendant-Appellant.*

―――――――――――

Appeal from the United States District Court for the
Central District of Illinois.
No. 21-cr-40030 — **Sara Darrow**, *Chief Judge*.

―――――――――――

ARGUED SEPTEMBER 13, 2022 — DECIDED OCTOBER 7, 2022

―――――――――――

Before FLAUM, BRENNAN, and SCUDDER, *Circuit Judges*.

FLAUM, *Circuit Judge*. This appeal concerns a violation of
the Speedy Trial Act that occurred due to delays transporting
Roman Lloyd to his mental competency evaluation. The gov-
ernment conceded that over seventy nonexcludable days
elapsed, and the district court dismissed the case. However,
the district court exercised its discretion to dismiss it without
prejudice. As a result, the government promptly brought the
same charges again. Lloyd pleaded guilty but reserved his

right to challenge the district court's decision not to dismiss the original indictment with prejudice.

Because the district court did not abuse its discretion in dismissing Lloyd's indictment without prejudice, we affirm.

## I.    Background

### A.  Credit Union Robbery and Subsequent Flight

On March 27, 2019, Lloyd walked into the Ascentra Credit Union in Moline, Illinois. Covered from head to toe, he approached the teller and told her, "This is a bank robbery. I need $20,000." The teller gathered a total of $16,878 from her drawer and the drawers of three adjacent tellers. Cash in hand, Lloyd left the credit union, and someone called 911.

Shortly thereafter, police officers located Lloyd's vehicle and attempted a traffic stop. Lloyd refused to pull over, and a high-speed chase ensued, reaching speeds of approximately 100 miles per hour, zigzagging between Illinois and Iowa. Lloyd drove through residential neighborhoods, school zones (while school was in session), and in the wrong direction down one-way streets. Officers eventually managed to slow him to about sixty miles per hour by using stop sticks (a device put on the road in front of a moving vehicle to deflate the tires) and then used a PIT (precision immobilization technique) maneuver to stop Lloyd's vehicle in a ditch. Fortunately, no one was hurt, including Lloyd.

### B.  Arraignment and Competency Evaluation

Lloyd was indicted on one count of credit union robbery under 18 U.S.C. § 2113(a), and one count of transporting stolen money interstate under 18 U.S.C. § 2314. On July 11, 2019, he was arraigned and pleaded not guilty. The same day, the

district court set a pretrial conference for August 28, 2019, and trial for September 9, 2019.

Since this case is about the delays in bringing Lloyd to trial, a brief overview of the Speedy Trial Act helps put the procedural events in context. "In any case in which a plea of not guilty is entered," the Speedy Trial Act commands that "the trial of [the] defendant … commence within seventy days" of the filing of the indictment or the defendant's arraignment, "whichever date last occurs." 18 U.S.C. § 3161(c)(1). However, the Act provides exceptions under which some "periods of delay" are "excluded" and do not count toward the seventy-day limit. *Id.* § 3161(h). Relevant to Lloyd's appeal, "delay resulting from … any examinations[] to determine the mental competency … of the defendant" is excluded. *Id.* § 3161(h)(1)(A) ("Competency Examination Exception"). In addition, time spent transporting a defendant "to and from places of examination" is excluded under the Act, except that "any time consumed in excess of ten days from the date [of] … an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." *Id.* § 3161(h)(1)(F) ("Transportation Exception"). Any days in excess of those ten days are presumptively nonexcludable and count toward the seventy-day clock.

We return now to the facts. At the pretrial conference on August 28, 2019, and at a subsequent pretrial conference on October 9, 2019, Lloyd's counsel requested continuances. The court granted both, finding that they were "in the interest of justice" and excluded the time under the Speedy Trial Act. *See id.* § 3161(h)(7)(A) (excluding delays related to a continuance when the "the ends of justice served by taking such action

outweigh the best interest of the public and the defendant in a speedy trial"). Trial was set for December 30, 2019, but on November 19, 2019, Lloyd's attorney filed a motion seeking a competency evaluation to determine whether Lloyd was competent to stand trial, as well as whether he was sane at the time of the robbery. The district court orally granted the motion and specified:

> I will also direct the marshals to transport the defendant to the designated evaluation facility.… [T]he time between now and the resolution of the motion—or the fitness concern shall be excluded pursuant to the Speedy Trial Act, pursuant to the statutory authority.

The court did not mention the Transportation Exception.

The same day, the court directed Lloyd's counsel to submit a written order memorializing the ruling and subsequently entered the order on November 22, 2019. The order instructed the Attorney General to arrange for the competency evaluation to be "conducted in a suitable facility closest to the Court." Relevant to the Speedy Trial Act, the order stated:

> [P]ursuant to 18 U.S.C. § 3161(h)(1)(A) [the Competency Examination Exception], the period of time from when defense counsel filed the motion to determine competency to when the Court enters an order finding the defendant competent is excluded for purposes of calculating the defendant's speedy trial rights.

Although the district court entered this order on November 22, 2019, Lloyd did not arrive at the site of his examination

until February 27, 2020. Shortly thereafter, the COVID-19 pandemic struck. Lloyd's competency evaluation was eventually completed on May 8, 2020, the psychologist's report was finalized on May 26, 2020, and Lloyd was returned to the Knox County Jail on July 1, 2020. On September 23, 2020, the district court conducted a hearing and found that Lloyd was competent.

### C. Motion to Dismiss Pursuant to the Speedy Trial Act

In the months after Lloyd was found competent, his trial date was continued several times so the government could produce discovery and Lloyd's attorney could prepare for trial. The parties agree that each time the trial was pushed back, the district court correctly excluded the delay from the Speedy Trial Act calculation because the ends of justice were served by granting the continuance. *See* 18 U.S.C. § 3161(h)(7)(A).

Then, on April 26, 2021, Lloyd filed a motion to dismiss the indictment with prejudice pursuant to the Speedy Trial Act. *See id.* § 3162(a)(2). Lloyd argued that the time (in excess of ten days) it took to transport him to and from his competency evaluation was not excluded from the Act's count, pursuant to the Competency Evaluation Exception. When combined with the forty-eight days between his arraignment and the first pretrial conference, Lloyd contended that many more than seventy countable days had elapsed.

The district court held a hearing on Lloyd's motion to dismiss on July 8, 2021. At the hearing, the court agreed that a Speedy Trial Act violation occurred and dismissed the case. Nonetheless, the court exercised its discretion under the Act and dismissed the case without prejudice, which permitted

the government to bring the same two charges against Lloyd shortly thereafter.

Once Lloyd was reindicted, he pleaded guilty to both crimes but reserved the right to challenge the district court's dismissal of the original indictment without prejudice. Lloyd now appeals that decision.

## II.    Discussion

The sole issue on appeal is whether the district court abused its discretion when it decided to dismiss the indictment without prejudice, which permitted the government to re-indict Lloyd.[1]

### A.  Standard of Review

The Speedy Trial Act mandates that, "[i]f a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). Dismissal is required, but, the Act grants the district court discretion regarding whether to dismiss the indictment with or without prejudice. There is no presumption in favor of either outcome. *United States v.*

---

[1] It is worth briefly noting what is not at issue. First, despite complaining on appeal about delays in transporting Lloyd to *and from* his competency evaluation, Lloyd does not appeal the district court's conclusion that the delay in returning him to Knox County was reasonable in light of the COVID-19 pandemic. Second, the government concedes the Act was violated. Last, at the district court, the government agreed with Lloyd's interpretation of the interplay between the Competency Examination Exception (§ 3161(h)(1)(A)), and the Transportation Exception (§ 3161(h)(1)(F)). Because Lloyd does not appeal the district court's finding of a violation, we do not need to reach this issue.

*Taylor*, 487 U.S. 326, 334–35 (1988). The Act sets forth three factors, "among others," that a court should consider in exercising that discretion: (1) "the seriousness of the offense;" (2) "the facts and circumstances of the case which led to the dismissal;" and (3) "the impact of a reprosecution on the administration of this chapter and on the administration of justice." § 3162(a)(2).

"We review the district court's decision to dismiss without prejudice for abuse of discretion." *United States v. Sykes*, 614 F.3d 303, 309 (7th Cir. 2010). A district court's discretion over whether to dismiss with prejudice is "substantial." *Id.*; *see also United States v. Smith*, 576 F.3d 681, 691 (7th Cir. 2009) (noting that "an 'open-ended list' of the sort drawn up by Congress in Section 3162 'imbues a court with great discretion'" (quoting *United States v. Fountain*, 840 F.2d 509, 512 (7th Cir. 1988))). Still, the Speedy Trial Act "confines the district court's discretion more narrowly than in cases where no factors exist." *United States v. Killingsworth*, 507 F.3d 1087, 1090 (7th Cir. 2007). The Supreme Court has cautioned that, "[a]lthough the role of an appellate court is not to substitute its judgment for that of the trial court, [its] review must serve to ensure that the purposes of the Act and the legislative compromise it reflects are given effect." *Taylor*, 487 U.S. at 336. Those purposes include "serv[ing] the public interest by … reducing defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the deterrent effect of punishment." *Zedner v. United States*, 547 U.S. 489, 501 (2006). Thus, we must "undertake more substantive scrutiny to ensure that the judgment is supported in terms of the factors identified in the statute." *Taylor*, 487 U.S. at 337. Still, the Supreme Court has instructed, "[W]hen the statutory factors are properly considered, and supporting

factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.* Our review for abuse of discretion is, therefore, still "deferential." *Fountain*, 840 F.2d at 512.

## B. The Speedy Trial Act Factors

Courts balance the three factors articulated in the Act to determine whether an indictment should be dismissed with prejudice or without.

### 1. Seriousness of the Offense

The first factor, the seriousness of the offense, is largely self-explanatory. It asks the district court to determine, by relying on its experience, whether the offense is serious compared to other federal crimes. *Cf. Taylor*, 487 U.S. at 337–38 (finding "no reason to doubt the court's conclusion" that "drug violations" were serious); *Sykes*, 614 F.3d at 310 ("The judge accurately characterized bank robbery as 'quite serious.'"). We have cautioned, though, that the mere fact that no one was injured during the commission of the crime is insufficient to support a finding that an otherwise grave offense (such as possession of a firearm in furtherance of a drug-trafficking crime) weighs in favor of dismissal with prejudice. *See Killingsworth*, 507 F.3d at 1090. We have also observed that "[t]he 'penalty' imposed on the prosecutor (and the rest of society) by dismissing with prejudice rises with the seriousness of the crime." *Fountain*, 840 F.2d at 512. Thus, where a crime is serious, "the sanction of dismissal with prejudice should … be imposed only for a correspondingly serious delay." *United States v. Carreon*, 626 F.2d 528, 533 (7th Cir. 1980).

Regarding the seriousness of Lloyd's offense, the court stated, "The case is serious, from what I know about it." The

court explained, "[W]hile all felony federal cases are serious, … I would put unarmed bank robbery kind of in the middle of serious. Not the most by any means, and the potential penalties in an unarmed bank robbery are not as high as many of the other types of violent crime cases that we see, but it's certainly a serious offense." Like the Supreme Court in *Taylor*, "[w]e have no reason to doubt the court's conclusion in that regard." 487 U.S. at 338.

On appeal, Lloyd tries to minimize the seriousness of his conduct, arguing that an offense "'in the middle of serious' … is, by definition, neither serious nor non-serious." But that is not what the district court said; it determined that the offense was, indeed, "serious," and Lloyd's counsel admitted as much in arguing his motion to dismiss when he said, "It's an unarmed bank robbery, a serious offense …." The facts articulated in Lloyd's Presentence Investigation Report—which Lloyd did not object to—confirm this. We agree with the district court's conclusion regarding the gravity of the offense. Lloyd's flight through school zones and residential areas was, as the district court aptly characterized during sentencing, "really alarming and disturbing behavior."

We have not hesitated to reverse a dismissal with prejudice where a district court "undervalued this factor …." *Killingsworth*, 507 F.3d at 1090. *Killingsworth* instructs that courts must look at the totality of a crime, not just the end result. *See id.* (reversing dismissal with prejudice, in part because "the district court undervalued [the seriousness of the offense] factor by stating that while the offense was serious and involved a gun, there was no murder or injury"). Lloyd attempts to distinguish his conduct from Killingsworth's, highlighting that he was not in possession of a firearm; however, his conduct is

arguably more serious since he endangered many more peo-
ple in his multi-state, high-speed car chase through school
zones and residential neighborhoods, even if, like in *Kill-
ingsworth*, no one was hurt. A serious offense is not rendered
nonserious by serendipitous lack of injury.

Accordingly, the district court did not abuse its discretion
when it determined that Lloyd's offense was serious and
weighed in favor of dismissal without prejudice.

### 2.  *Facts and Circumstances Leading to Dismissal*

Turning to the second Speedy Trial Act factor, when ana-
lyzing the facts and circumstances leading to dismissal, a
court should consider the length of delay and the conduct of
the relevant actors. The "length of delay" is "a measure of the
seriousness of the speedy trial violation …." *Taylor*, 487 U.S.
at 340. Nonetheless, "there are no bright-line rules," and even
a lengthy delay "does not by itself require dismissal with prej-
udice." *Sykes*, 614 F.3d at 310 (affirming dismissal without
prejudice even though 224 nonexcludable days had elapsed).

Lloyd frames the inquiry under the second factor as
"whether the government or the defendant is *more to blame* for
the delay." *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir.
2003) (emphasis added) (alteration omitted) (quoting *Doggett
v. United States*, 505 U.S. 647, 651 (1992)). But that framework
is meant for alleged violations of the *constitutional* speedy trial
right. *See id.* at 552–53. Under the Act, in contrast, actions by
both parties—the defense and the prosecution—are relevant.
The Supreme Court emphasized that whether the govern-
ment "acted in bad faith" or demonstrated a "pattern of ne-
glect[,] … suggesting something more than an isolated unwit-
ting violation, would clearly … alter[] the balance [of this

factor]." *Taylor*, 487 U.S. at 339. As for the defense's conduct, we have explained that "[a] defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention." *Fountain*, 840 F.2d at 513.

The district court identified the second factor as the "main focus" of its decision to dismiss the case without prejudice. It first considered the length of the delay for purposes of determining whether a Speedy Trial Act violation had occurred. The court focused particularly on Lloyd's transportation to and from the competency evaluation. On the one hand, it found that the delay that occurred during Lloyd's return trip "was reasonable under the unique circumstances of the pandemic." On the other hand, it found that the government failed to provide any evidence why it "should consider [the delay in transporting Lloyd *to* the evaluation] reasonable … [other] than … a resource argument …." The court thus determined there was not "sufficient evidence" to consider the transportation "delay above and beyond the ten days [allowed by statute] … reasonable." Ultimately, the court concluded that the Act was violated because 106 nonexcludable days accrued.

The court also considered the length of the delay in weighing the second factor and determining whether dismissal should be with prejudice or without. Since we have held that a delay exceeding 200 nonexcludable days does not necessarily require a dismissal with prejudice, a delay of 106 days does not signal that the district court abused its discretion on this factor either. *See Sykes*, 614 F.3d at 310; *see also United States v. Arango*, 879 F.2d 1501, 1508 (7th Cir. 1989)

(concluding that a three-month delay is not "*per se* 'substantial' enough to justify dismissing the charges with prejudice").

Evaluating the parties' conduct leading to the violation of the Act, the district court expressed considerable frustration with "the length of time it takes for these competency evaluations to be conducted" and found that "the time before [transportation was] implemented" took "too long … in this case." The court also considered conduct on the defense side—specifically, not objecting earlier to Lloyd's delayed transportation. The court noted that, although no party has a "magic ball" allowing them to anticipate "potential problems," it was struck by "the lack of objection or even discussion regarding how the transport was going to occur and the timeline" given how widespread these sorts of transportation delays are.

Lloyd protests the district court's decision to factor defense conduct into the analysis, arguing that "the district court's reasoning under this factor is patently flawed because the government bears the entire responsibility for the delay." As Lloyd sees it, he is being penalized for his counsel's proposed order concerning the competency evaluation which did not mention the possibility of counting delays related to transportation. Lloyd insists that he had no means of objecting to a "hypothetical violation of [the Transportation Exception] before it ever occurred …." In addition, he says he "had no obligation to discuss 'the timeline of [the transport] because [the Transportation Exception] tells the government what that timeline is."

While Lloyd is correct that the Department of Justice was the sole party responsible for coordinating his transportation to the site of his mental competency evaluation, defense

conduct is a relevant consideration under the second factor. The statute directs courts to consider "the facts and circumstances … which led to the dismissal" and does not cabin that inquiry to actions by the government. 18 U.S.C. § 3162(a)(2); *see also Taylor*, 487 U.S. at 339 (considering the defendant's "failure to appear" for trial on the "69th day of the indictment-to-trial period"). Here, those facts and circumstances include Lloyd's belated objection to the transportation delays.

Lloyd's argument that the district court blamed him for not informing the government about the law, or objecting to the order,[2] ignores the district court's colloquy with the government and its dismissal of the indictment. The judge admonished the government, "you were tasked with knowledge of the law, and even if … my oral ruling and my written order [prepared by defense counsel] didn't specifically address [the Transportation Exception], … why would you—should you be able to … avoid the implications of the other subsection of the statute?" In response, the government admitted that it is "tasked with being aware of every aspect of law." The court then held the government responsible for the delay by

---

[2] Lloyd frames this argument as the district court blaming him for not objecting to a "hypothetical violation of § 3161(h)(1)(F) before it ever occurred." But, as Lloyd's counsel argued in support of the motion to dismiss, by the time Lloyd arrived in Lexington on February 27, 2020, the number of nonexcludable days had already exceeded 100. The motion to dismiss was not filed until April 26, 2021. So, even if Lloyd's counsel did not foresee the government's forthcoming violation of the Act in November 2019 when the competency evaluation was ordered, this objection could have been raised far earlier. *Cf. Fountain*, 840 F.2d at 513 (noting that a defendant who "waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention").

rejecting its excuse that it relied on the text of the order and finding that the Act was violated.

In the same colloquy, however, the government explained that the delay was inadvertent: "[T]he marshals [in charge of arranging Lloyd's transportation] … relied on the order, and they believed that the time [for transportation] had been excluded [under the Speedy Trial Act]." While the government is charged with knowledge of the law, it explained, "[W]e're all humans …." It added, "the [U.S. Attorney's] Office is becoming acutely aware of" this issue and is "trying to proactively address it." The district court was entitled to factor this proffer of inadvertence into its analysis and weigh it in favor of dismissing without prejudice. *See Killingsworth*, 507 F.3d at 1090–91 (explaining that the district court "overemphasized" that the defendant "did nothing wrong" and underemphasized that the government "did not intentionally cause the delay"); *Carreon*, 626 F.2d at 533 (factor weighed in favor of dismissal without prejudice where "the government did not intentionally seek delay"); *Sykes*, 614 F.3d at 310 ("The court also correctly considered the absence of fault on the part of the government.").

What Lloyd fails to appreciate is that dismissal without prejudice is often appropriate where neither the government nor the defendant is "at fault for failing to move the case along." *Killingsworth*, 507 F.3d at 1090. Also, by repeatedly framing the district court's decision as holding that "the facts and circumstances of this case *favor* the government," (emphasis added), Lloyd overlooks the fact that the Act's calculus is not a zero-sum game, and the Act has multiple purposes. Congress aimed to "protect and promote speedy trial interests that go beyond the rights of the defendant"—in contrast

to the Sixth Amendment, which "primarily safeguards the *defendant's* speedy trial right—which may or may not be in accord with *society's* [interests]." *Zedner*, 547 U.S. at 501 (emphasis added) (quoting S. Rep. No. 96-212, at 29 (1979)). As we have noted, dismissing a case with prejudice imposes a "penalty" on society in addition to prosecutors, and even a blameless defendant's conduct is relevant when deciding the appropriate penalty. *See Fountain*, 840 F.2d at 512–13; *see also United States v. Loera*, 565 F.3d 406, 411 (7th Cir. 2009) (affirming dismissal without prejudice where "both parties requested continuances; [the defendant] suffered no significant prejudice; and there was nothing to indicate bad faith on the part of the government").

Lloyd's reliance on other cases in which transportation took longer than ten days is also misplaced. As the government correctly pointed out in response, the Transportation Exception only *presumptively* caps the excludable amount of transportation time at ten days; the government may rebut that presumption (as it did here when the delay on Lloyd's return trip was a result of the COVID-19 pandemic). Moreover, the government has seventy nonexcludable days within which to bring a defendant to trial. Even if transportation takes longer than ten days, it does not automatically result in a violation of the Act—it only accrues toward the seventy-day cap.

Furthermore, as the government noted during the motion to dismiss hearing, there is a plausible argument that a court could exclude some unreasonable travel delays from the speedy trial count if "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A); *see United*

*States v. Turner*, 602 F.3d 778, 785 (6th Cir. 2010) (holding the Act was violated when the government took more than ten days to transport the defendant and did "not rebut the presumption of unreasonableness," but clarifying that its "holding limits only automatic exclusion under § 3161(h)(1), not the ends-of-justice continuances that courts may grant under § 3161(h)(7)" (citing *Bloate v. United States*, 559 U.S. 196, 214 (2010) ("Subsection (h)(7) provides [m]uch of the Act's flexibility … and gives district courts discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs …." (internal citations and quotation marks omitted) (first alteration in original)))).

In sum, Lloyd has not demonstrated that the district court abused its discretion when it found that the facts and circumstances leading to dismissal weighed in favor of dismissal without prejudice.

### 3. *The Impact of a Reprosecution on the Administration of the Act and on the Administration of Justice*

Finally, the third factor, the impact of a reprosecution on the administration of the Act and the administration of justice, requires courts to consider the repercussions of dismissing the case. Recognizing the flexibility inherent in this third factor, a court's analysis should account for any prejudice to the defendant as well as whether dismissal with prejudice is necessary to discourage repeated violations of the Act. *See Taylor*, 487 U.S. at 340–42 (considering "prejudice to the defendant" as well as whether dismissal with prejudice is "appropriate in order to vindicate the guarantees of the Speedy Trial Act"); *Killingsworth*, 507 F.3d at 1091 (holding "the purpose of the Act would not be served by requiring the court to impose the maximum sanction [of dismissal with prejudice] for a

minimum violation [of the Act]" (quoting *United States v. Hawthorne*, 705 F.2d 258, 261 (7th Cir. 1983)).

In considering whether the defendant suffered any prejudice, length of delay is again relevant, because "[t]he longer the delay, the greater the presumptive or actual prejudice to the defendant …." *Taylor*, 487 U.S. at 340. Courts should consider not only prejudice to the defendant's ability to prepare for trial, but also prejudice resulting from restrictions on his liberty. *See id.* at 340 (noting that "[i]nordinate delay between public charge and trial … may disrupt [a defendant's] employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends" (some alterations in original) (quoting *Barker v. Wingo*, 407 U.S. 514, 537 (1972) (White, J., concurring))). That said, just because a defendant was detained pretrial does not mean the charges must be dismissed with prejudice. *See Killingsworth*, 507 F.3d at 1091 (noting that such a rule "would render Congress's designation of two types of dismissal largely irrelevant").

In addition to prejudice, courts should assess whether the "circumstances of the case [leading to the delay] would be []likely to recur," such that dismissing the case with prejudice would have a needed remedial effect of warding off repeated violations of the Act. *Carreon*, 626 F.2d at 533; *see also Fountain*, 840 F.2d at 512 (noting dismissal with prejudice penalizes not only the prosecutor but "the rest of society"); *United States v. Dilg*, 726 F. App'x 368, 372 (6th Cir. 2018) (explaining the "two main considerations under this factor" are "[p]rejudice to the defendant" and "the deterrent effect of a with-prejudice dismissal on the government's … repeated violations of the Speedy Trial Act"). Although "dismissal with prejudice

always sends a stronger message [to the government] than dismissal without prejudice," "[t]hat factor alone, by definition implicated in almost every Speedy Trial Act case, does not suffice to justify barring reprosecution … ." *Taylor*, 487 U.S. at 342–43. Indeed, "[d]ismissal without prejudice is not a toothless sanction … ." *Id.* at 342. Dismissing a case with prejudice, purely to "send [a] strong message to the Government that unexcused delays will not be tolerated" is inappropriate because courts must consider not just "[t]hat factor alone" but "all the other circumstances present." *Id.* at 343.

The district court's oral ruling pertaining to this final factor was limited. It stated:

> The impact of a re-prosecution on the administration of this chapter and on the administration of justice, I just—I don't even know really how to apply that factor, but I don't find that a dismissal without prejudice would have a significant impact that would require me to dismiss it with prejudice.

Of course, "a 'barebones' district court explanation of its inherently discretionary … ruling 'amounts to no exercise of discretion at all,' a 'non-exercise of discretion [that] is itself an abuse of discretion.'" *United States v. Fowowe*, 1 F.4th 522, 527 (7th Cir. 2021) (second alteration in original) (quoting *United States v. Corner*, 967 F.3d 662, 666 (7th Cir. 2020)). Viewed in isolation, the court's statement could counsel a different outcome. *Cf. United States v. Settles*, 43 F.4th 801, 805–06 (7th Cir. 2022) (noting that if the district court's "flawed [sentencing calculations] … were all we had, we would seriously consider a remand," but finding that other statements by the district

court "reassure[d] us that the court reviewed the case and ultimate sentence as an integrated whole").

Here, the district court's colloquy with counsel is informative. The court repeatedly asked Lloyd's attorney, "[W]hat is the actual prejudice in light of the … several requests to continue both before the eval[uation] and [after?]" Defense counsel responded that "[t]he prejudice is the case is extended … for no reason other than the marshals just not moving the person. And Mr. Lloyd's incarcerated; he's detained." The court followed up by asking, "[A]nd your position is you would have been ready to go to trial prior to that, and, therefore, you were prejudiced in the ability to get to trial earlier?" At that point, Lloyd's attorney conceded, "[L]ook, I can't tell you with complete certainty that the case would have been to trial within that time period." In fact, the court pointed out that it was not even holding trials during that period due to the COVID-19 pandemic.

The court also heard the parties' conflicting arguments regarding prejudice. Lloyd highlighted the "prejudice of [a] person having to continue having the case held over their head" and being "detained as a presumptively innocent citizen." The government countered that "[t]here were 240 days of continuances after [Lloyd] was found competent, …. [so] he can point to no prejudice" from the transportation delay. The discussion and explication of these issues during the motion to dismiss hearing indicates that they factored into the court's ruling, shortly thereafter, that "dismissal without prejudice would [not] have a significant impact [on the Administration of the Act and on the Administration of Justice]."

Moreover, the district court considered the primary argument on this factor that Lloyd now articulates on appeal—that

the government should be punished for allegedly systemic delays. Lloyd complains that "[a]llowing the government to simply walk back into the courtroom mere hours later with a complaint and continue on with the case is not a sanction." The Supreme Court expressly rejected that argument. *See Taylor*, 487 U.S. at 342 ("Dismissal without prejudice is not a toothless sanction ...."). In *Taylor*, the Supreme Court reversed a dismissal with prejudice where "the District Court did not fully explicate its reasons for dismissing with prejudice" but concluded that the government's "lackadaisical" conduct warranted the result. *Id.* at 337–38. Reversing, the Court cautioned, "If the greater deterrent effect of barring reprosecution could alone support a decision to dismiss with prejudice, the consideration of the other factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant" dismissal with prejudice. *Id.* at 342.

In the district court, Lloyd's counsel argued that dismissing the case without prejudice effectively tells the U.S. Attorney's Office that it can "take as long as [it] wants" because the "[w]orst thing that's going to happen is dismissal without prejudice." He drove his point home: "[C]learly, it's not much of a sanction." The court was sympathetic, recognizing the persistent issue of "the length of time it takes for … competency evaluations to be conducted" and the delay in implementing the physical transport of defendants to these evaluations. It added that the "Bureau of Prisons is taking too long to conduct these [competency] examinations" but concluded, "It's not a problem I can fix." While the court did not explicitly hold that a dismissal with prejudice was unnecessary to the administration of the Act, the court heard Lloyd's argument on that point moments before it ruled. Ultimately, the court was not convinced that a deterrent effect of a dismissal with

prejudice swayed the balance of the factors, particularly considering that the first two factors—the seriousness of the crime and circumstances leading to the violation of the Act—weighed in favor of dismissal without prejudice.

Based on the court's discussions with counsel throughout the hearing, it is evident, despite somewhat admitted confusion, that the court was attentive to the inquiry set forth by the Supreme Court under this factor. Nevertheless, we emphasize that "a district court must carefully consider [the three] factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review." *Taylor*, 487 U.S. at 336. While the Speedy Trial Act "does not mandate any particular formula or order of decisionmaking," *United States v. Wright*, 6 F.3d 811, 816 (D.C. Cir. 1993), a district court must "carefully express its decision whether or not to bar reprosecution in terms of the guidelines specified by Congress," *Taylor*, 487 U.S. at 343.

In this case, the discussions between counsel and the court at the motion to dismiss hearing demonstrate the court's sufficient consideration and application of all the factors within the Act. As such, the court did not abuse its discretion when it concluded that the third factor did not outweigh the other two when it came to dismissing the indictment without prejudice.

### III.    Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court.